## GORDON CLARK v. THE STATE.

No. 21127. Delivered June 5, 1940.
Rehearing Denied October 16, 1940.

The opinion states the case.

*Shead & Smith,* of Longview, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was charged with the offense of burglary of a private residence at nighttime, and was by the jury assessed a penalty of twenty years in the penitentiary, hence this appeal.

It appears from the facts that Mr. Sample and his wife lived in Longview, Texas, and while away on a summer trip to California they left a negro by the name of Henry Johnson in charge of their home. Johnson slept in a room over their garage, but had a key to the home, and went in there and cooked his meals in the kitchen. He had been working for them for many years. He cleaned the house, and sometimes slept in there. There was a large lock on the door similar to a Yale lock, and there was in the house some expensive silverware as well as other things such as women's wearing apparel. On the evening a little after dark Johnson testified he was watering the flowers just in front of the front door, and it was closed. That the next morning, after he had gotten up about six o'clock, he discovered the house was open. The sun was up and shining at the time of this discovery. It appears that the entry was made through the front door, which was evidently dam-

aged in making an entrance, since the house had a new door at the time of this trial.

The State showed that Mrs. Gordon Clark, appellant's wife, had some valuable silverware, identified as having been taken from this house at the time of the burglary, and that she left the same with a Mrs. Joel (Red) Roberts in Shreveport, Louisiana, in the presence of Mrs. Roberts and Mrs. Robert Earhart on Tuesday evening, July 25, 1939, at about 8:30 o'clock in the evening. The State then offered the statement of appellant, which reads as follows, omitting formal parts:

"My name is William Gordon Clark. My address is Longview, Texas. I am 37 years old. I have been going to Springhill, Louisiana, on several occasions to play cooncan. About two months ago I went over to Springhill, Louisiana, and played with a negro by the name of J. C. Nathan Hall, a big yellow negro. I beat him out of twenty-five or thirty dollars. We got in an argument, then he left and came back with a nickel plated pistol. I beat him out of this gun. Then he went back and got some silverware. I paid him $8.00 for this silverware. The silverware is the same silverware that my wife (Eugenia) sold Mrs. Red Roberts in Shreveport, Louisiana, a few days later.

"The silverware shown me in the police station today is the silverware that I got from this negro in Springhill, Louisiana. The pistol I got from this negro is the gun that the sheriff in Gilmer got from me."

It will be noted that this burglary is shown to have taken place on July 24, 1939; that appellant's written statement contains an exculpatory matter, that is, that he bought this identical silverware that his wife took to Louisiana from a negro named Nathan Hall, with whom he was gambling at such time. The State endeavored to disprove this exculpatory statement by the following testimony of Savannah Williams:

"My name is Savannah Williams. I live in Minden, Louisiana. I came over here this morning with Mr. Huff, Deputy Sheriff.

"In answer to your question as to whether or not I know a negro by the name of J. C. or Nathan Hall; will say, I knew a negro named Nathan Hall.

"I knew Nathan Hall about two and a half years. He is now dead. I killed him on the 13th day of July, last year.

"I do not know the defendant, Mr. Clark. I have seen him.

"I have seen Mr. Clark around my house with Nathan Hall."

Of course if this silverware was stolen on July 24, 1939,

and Nathan Hall died on July 13, 1939, then appellant's exculpatory statement seems to have been disproven. There is left, however, the inculpatory portion thereof, wherein he admits possession of this property shown to have been recently stolen from the Sample home.

The appellant offers an alibi witness, Walter Williams, who testified that he ran a gambling house and that appellant was at his house from July 21st to July 25th, 1939, in Springhill, Louisiana, about fifty miles from Longview, Texas. There is some further testimony that the appellant and three other men went into Shreveport, Louisiana, to see the witnesses Mrs. Earhart and Mrs. Roberts, and asked them whether they were coming to Texas to testify, and asked them "if his attorney asked them if he, appellant, was with Mrs. Clark when she brought the silverware there to say that he was not along, that she had a married man in the car with her from Longview. He said he hoped we did not appear in court against him as it would go hard with him."

Bill of exceptions No. 1 complains of the failure of the allegation and proof to correspond, in that it was shown that the private residence alleged to have been burglarized was owned, occupied and controlled by Clark Sample, and that Henry Johnson was not the owner, occupier nor controller thereof. In our opinion Henry Johnson was in possession, care and control of such house, and the special ownership could have been properly alleged in him. During Mr. Sample's absence from such residence Johnson had absolute control, care and custody of such house, cleaning the same, keeping the premises, and actually using the kitchen each day. True, he slept in another room on the premises, but always each day performing certain duties therein, and possessed of a key to such private residence. We quote from Branch's Penal Code, p. 1272, Sec. 2324: "Ownership may be directly alleged in the person in possession, that is, in the actual care, control and management of the property at the time of the alleged burglary, and it is not necessary to allege how such person, who is in law the special owner, came to be such owner. Linhart v. State, 33 Texas Crim. Rep. 504, 27 S. W. 260; Reed v. State, 34 Texas Crim. Rep. 597, 31 S. W. 404; Alvia v. State, 42 Texas Crim. Rep. 424, 60 S. W. 551; Johnson v. State, 48 Texas Crim. Rep. 339, 88 S. W. 813."

Bill of exceptions No. 2 relates to an objection relative to Mr. Sample's qualifications when he testified that a certain silver bowl taken from his home at the time of the burglary

had the value of $350.00. This testimony was not material, and an estimation of its value could have no effect either one way or another upon the case presented. The appellant was charged with burglary with intent to steal and not felony theft, and according to his own statement he was in possession of personal property taken from the burglarized house, and its actual value was immaterial.

Bill of exceptions No. 3 is a complaint because the witness Clark Sample was allowed to testify that there were other and less valuable articles of silverware in the house that were not taken by the burglars, as well as other articles which were taken in the way of wearing apparel which were expensive while other apparel not so expensive was left, but scattered about on the floor of the house. We think these matters were material possibly in that they might have had some bearing as to what kind of person was able to make such a selection from the opened house; and surely such circumstances were a part of the transaction itself.

Bill of exceptions No. 4 is based upon the admission of the appellant's statement before the officers, the effect of which was to show that he had possession of some of the articles taken from the house, but to explain such possession in a manner that would have exculpated him from such burglary. This statement was objected to because it was said to have been made after an improper warning had been given to the appellant. We set forth the warning found in the instrument which we think is sufficient, see Art. 727, C. C. P.;

"TO WHOM IT MAY CONCERN:

"After I have been warned by Louis Grigsby the person to whom said statement is made that I do not have to make any statement at all, and that any statement I make may be used in evidence against me on the trial for the offense or offenses concerning which this statement is herein made, I wish to make the following voluntary statement to the aforesaid person:"

Bill of exceptions No. 5 complains of the testimony of Mrs. Earhart in that she was allowed to testify that Mrs. Gordon (Eugenia) Clark brought a portion of the silverware (afterwards identified as a portion of the property taken from the burglarized house) to the home of Mrs. Roberts in Shreveport, Louisiana, because it was contended that there was no connection shown between the defendant and his wife, or that defendant ever had possession of such silverware, nor was he

present at the time of the delivery thereof. We think an answer thereto lies in appellant's statement in which he says:

"The silverware is the same silverware that my wife (Eugenia) sold Mrs. Red Roberts in Shreveport, Louisiana, a few days later. The silverware shown me in the police station today is the silverware that I got from this negro in Spring-hill, Louisiana." We are impressed with the opinion that this above statement connects appellant rather closely with the possession of this stolen property, and the acts of his wife in disposing of the same would be admissible against him where his own testimony shows their connection therewith.

Bill of exceptions No. 6 complains of the fact that the reporter's notes of the testimony of Mrs. J. M. (Red) Roberts taken on a former trial of this case were introduced in evidence over the objection of the defendant "without first accounting for the absence of the said Mrs. Roberts as a witness, for the reason that it was not shown that Mrs. Roberts was not available as a witness, and the State did not account for her absence and no showing was made that Mrs. Roberts could not be obtained as a witness for the State."

It was shown that Mrs. Roberts, who resided in Shreveport, Louisiana, was sick in a hospital in Hot Springs, Arkansas, and was not able to be present at the trial and testify in person. It was also shown that she had been present at a former trial and had testified therein, and her testimony there given was reproduced in this trial. This court has often held that where a witness at a former trial is absent and his attendance can not be procured, under certain circumstances, the stenographic notes of his testimony properly proven up,—were admissible. Smith v. State, 66 Texas Crim. Rep. 593, 148 S. W. 722; also see Vernon's Ann. Crim. Statutes, Vol. 1, C. C. P. Art. 3, and many authorities thereunder. According to this long line of decisions following the Robertson case, 63 Texas Crim. Rep. 216, 142 S. W. 533, we hold that no error is here shown. Where a defendant has once been confronted by the witness with opportunity for cross-examination, and upon a further trial the witness is dead, insane or beyond the jurisdiction of the court, his testimony given on a former trial can be reproduced by one who knows the same.

Bill of exceptions No. 7 complains because therein it is contended that the jury was allowed to separate while deliberating upon their verdict. It seems that the juror Mr. Northcutt,— when he ascertained that he would be held over the lunch hour,

and while the attorneys and the court were all in the court room, as the jury retired to their room just off the court room, together,—picked up the telephone, which was on the judge's desk, and called his wife and told her to go to school after their son, that he would not be able to get away to do so, and Mrs. Northcutt agreed to do so and asked him would he be home that night, and he said "I hope so." That this was all the conversation had between them, they both testified on the motion for a new trial. The trial judge heard a portion of the conversation, and perceiving that this man was a juror, he took charge of him and immediately took him to the jury room about twenty feet away and placed him with his fellow jurors. The court's qualification shows that the juror had no further conversation with anyone, and that the court and the attorneys were in plain view of the juror at all times during this separation. We think that the State has herein discharged its burden of showing that no possible injury could be shown to appellant by the temporary separation of the jury, if such it can be called.

Bill of exception No. 8 complains of the trial court overruling appellant's motion for an instructed verdict because, as therein alleged, the State failed to prove that this burglary took place at nighttime. It is true that Johnson testified that the front door of this house was closed at "dusk dark," and that he did not see the same again until the next morning at about six o'clock and the sun was shining. It is also true however that this house was in the city of Longview, a populous city, and on one of its streets; that the front door was mutilated in some way, giving evidence of force being applied thereto in such a manner that there were scars thereon, and a new front door had been procured and the old one replaced therewith. Under the circumstances we think the jury had a right to reason from the testimony that this breaking was rather laborious and took some time in its execution, and that the deed was not perpetrated in the broad light of day, but that the evil done was during the ten or twelve hours of darkness in the nighttime.

Bill of exceptions No. 9 complains because it is therein contended that one of the jurors trying this case, Grady Crawford, was not a citizen of Gregg County, but that he was a citizen of Harrison County. The trial court heard evidence thereon, which might be called conflicting, and we think that there was sufficient testimony to uphold his decision that Mr. Crawford resided in Gregg County and was a proper juror.

The remaining bills of exceptions Nos. 10 and 11 relate to the court's charge, and do not show to have been filed nor called to the trial court's attention until April 3, 1940. It is noted, however, that the court's charge was filed on January 19, 1940. These objections and exceptions to the court's charge were made too late to be considered by us. Art. 666, C. C. P. reads in part as follows: "* * * All objections to the charge and to the refusal or modification of special charges shall be made at the time of the trial."

That Mr. Sample's house was burglariously entered on the night of July 24, 1939, seems to be fully shown. Appellant places himself in possession of much of the property taken therefrom at such time. He endeavors to exculpate himself by claiming the purchase of such property from a negro on the dates of from July 21st to July 25th, 1939. The State showed that the party from whom he claimed to have purchased such property had been killed on July 13, 1939, or eleven days prior to the burglary, and prior to the time appellant claimed to have purchased same from the deceased negro. The unexplained possession of this recently stolen proprty from a burglarized house has often been held to be sufficient to justify a verdict of guilty upon the part of the jury. Mr. Branch in his Penal Code, p. 1283, Sec. 2346, lays down the following doctrine, supported by numerous decisions: "If the State proves a burglary as alleged was committed by someone, and based on proof that defendant was found in possession of property recently stolen from the burglarized house the jury have found defendant guilty of the burglary, and that finding has been approved by the trial court whose duty it is to set aside the conviction if not satisfied that defendant is guilty as charged, the judgment will be sustained on appeal unless clearly wrong if there are facts or circumstances in evidence which justify the jury in disbelieving defendant's explanation of such possession, if any he made."

We find no error shown herein, and this judgment is affirmed.

### ON MOTION FOR REHEARING.

BEAUCHAMP, Judge.

Appellant's motion for rehearing in this cause treats thoroughly the issues of the case. We find from re-examining the record that all of them were considered by the court on

original submission, and we believe the proper conclusion was reached.

The motion for rehearing is overruled.