Karl HAMMOND, Appellant,

v.

The STATE of Texas, Appellee.

No. 69831.

Court of Criminal Appeals of Texas, En Banc.

Oct. 31, 1990.

Rehearing Overruled Nov. 28, 1990.

David R. Weiner, court appointed on appeal only, San Antonio, for appellant.

Fred G. Rodriguez, Dist. Atty., Ron Mendoza, Daniel Thornberry, Asst. Dist. Attys., San Antonio, and Robert Huttash, State's Atty., Austin, for the State.

Before the court en banc.

## OPINION

CLINTON, Judge.

Appellant was indicted in two paragraphs for the offense of capital murder. Paragraph one alleged appellant intentionally committed the murder of Donna Lynn Vetter in the course of an aggravated sexual assault against her. V.T.C.A. Penal Code, § 19.03(a)(2). Paragraph two alleged appellant intentionally killed Vetter in the course of committing burglary. *Id.* Both paragraphs were submitted to the jury, which returned a general verdict of guilty. Article 37.07, § 1(a), V.A.C.C.P. The jury answered both special issues submitted to it in the affirmative, Article 37.071(b)(1) & (2), V.A.C.C.P., and punishment was assessed at death. *Id,* § (e). Appeal is automatic to this Court. *Id.,* § (h).

Appellant brings six points of error. He does not assail sufficiency of the evidence in any respect. We therefore will not recite the facts of the offense except as necessary to explicate particular points of error. We will affirm.

In his first point of error appellant contends that the trial court erred in failing to grant the State's challenge for cause against venireman Verda Wilborn Tealer, whom appellant contends the record shows was absolutely disqualified from jury service under Articles 35.16(a)(2) and 35.19, V.A.C.C.P., on account of a former convic-

tion for theft.[1] At the conclusion of hearings held to determine whether the venireman had ever been convicted of theft, the trial court made a finding of fact that, *inter alia*, "[t]here was never a judgment entered adjudging her guilty of theft." The trial court concluded Tealer was qualified. In our view the record supports both the finding and conclusion of the trial court.

Voir dire of venireman Tealer occurred on the morning of March 12, 1987. After questioning was complete, both sides expressly indicated Tealer was an acceptable juror, and she was preliminarily sworn in as the twelfth juror in the cause. Tealer was dismissed and the parties proceeded to voir dire prospective alternates. After a noon recess, the prosecutor revealed that his office had just discovered venireman Tealer "has been convicted of shoplifting," and was therefore absolutely disqualified. Through an investigator for the District Attorney's Office, the State produced a record from the San Antonio Police Department showing arrest of one "Verda Mae Wilborn" for the offense of shoplifting on "11–24–62." The card bore the same date of birth as venireman Tealer's, and an address identical to a former address listed on Tealer's juror information card. In a column designated "disposition" appears the notation: "Pd $25.00 12–3–62". Defense counsel argued, and the trial court agreed, that this notation could have reflected no more than forfeiture of a bond in the event "Verda Mae Wilborn" had failed to appear in municipal court at the appointed time. The trial court asked the State to obtain any judicial records reflecting on the matter, and another recess was called so that venireman Tealer could be located.

Tealer testified in judge's chambers that she had indeed been charged with shoplifting when she was eighteen years old, that her grandfather had paid $25.00 to bail her out, and that she had never entered a plea in the cause. Defense counsel pointed out to the court that if a plea was entered on her behalf, See Articles 518 and 782, V.A.C. C.P. (1925), Tealer might be unaware of that fact. Another recess was taken to allow service of a subpoena to obtain records from the corporation court.

When the hearing continued in open court the next day, Sandra Bruce was called to the stand. The record indicates she was "Court Division Supervisor" for Municipal Courts in San Antonio. She produced a docket book for cases in Corporation Court of the City of San Antonio for 1962. On the basis of entries appearing in the docket book, Bruce had written a letter, notarized and dated March 13, 1987, the same day as the hearing, which stated: "On the 3 day of December, A.D., 1962, Verda Mae Wilborn, pled guilty [to theft under $5.00], and was fined $25.00. The fine was paid on December 3, 1962." Both the letter and the docket book were admitted into evidence for record purposes. Bruce conceded there was nothing on the face of the docket to indicate whether "Verda Mae Wilborn" had actually been present and entered a plea of guilty in her own behalf. Nevertheless, Bruce did testify that the docket entries demonstrate a plea of guilty was entered for her. It is not clear to us how the docket demonstrates that fact, and Bruce did not elaborate. What is clear from the docket is that $25.00 was in some fashion "PAID" on December 3, 1962, as stated in the letter.

On cross-examination of Bruce, defense counsel elicited the fact that the docket contained a judgment form that had been neither completed nor signed by the judge of the corporation court, but left totally blank. Upon perusal of the docket book, the trial court ascertained that no judg-

---

1. Article 35.16(a)(2), supra, reads, in pertinent part:
"(a) ... A challenge for cause may be made by either the state or the defense for any one of the following reasons:
\* \* \* \* \* \*
2. That he has been convicted or theft or any felony[.]"

Article 35.19, supra, reads:
"No juror shall be impaneled when it appears he is subject to the second, third or fourth cause of challenge in Article 35.16, though both parties may consent."

ment form had been filled out for any of the cases reflected therein. Defense counsel argued to the court that without a judgment of conviction, the challenge for cause could not be sustained. The trial court agreed, at least, that the question "boils down to, can you have a conviction without a judgment in a corporation court case[?]". The trial court hypothesized that because there was not a single judgment form filled out in the docket book, actual judgment must have appeared in some other place in 1962.[2] To test this hypothesis, the trial court sent for Judge Robert Lozano to testify.[3]

Lozano acknowledged that the docket sheet was never signed in prosecutions in corporation court in 1962. Asked by the court where the judgment would appear, Judge Lozano answered: "... it would be on the jacket. There were those little manilla folders and then the judgment was down at the bottom of the jacket on the face." Alluding to what we take to be *Texas Department of Public Safety v. Casselman*, 417 S.W.2d 146 (Tex.1967), Lozano opined "that if it [apparently, the jacket] was stamped on its face and the fine was paid that it became a final—final judgment[.]"[4] We gather that any "jacket" associated with Tealer's case was at some point destroyed. See note 2, *ante*. At the conclusion of Judge Lozano's testimony, the trial court adjourned the hearing until the following Monday, without ruling on the State's challenge for cause.

Court reconvened on Monday, March 16, 1987, and the trial court inquired whether appellant persisted in his desire that Tealer remain as a juror in his case. Both counsel and appellant himself acknowledged that he did. The trial court then proceeded to announce its findings of fact and conclusions of law, *viz:* that, *inter alia*, "[t]here was never a judgment entered adjudging her guilty of theft"; that "[t]he certificate prepared by the Corporation Court clerk, Sandra Bruce, being admittedly inaccurate, is incorrect and, therefore, a nullity"; and that "[i]t is the ruling of the Court that the juror, Verda Wilborn Tealer, is qualified and the challenge for cause is overruled."

■ Counter to his steadfast position at trial, appellant now maintains Tealer should have been excused because she was absolutely disqualified, and no consent on his part could render her acceptable. Article 35.19, supra. Whether Tealer was absolutely disqualified, however, was a question of fact to be resolved by the trial court in the first instance. Article 35.21, V.A.C.C.P. Especially in view of the absence either of an admission from the venireman that she had been convicted of theft, or a judgment of conviction reflecting same, it was within the province of the trial court to find as an historical fact that the venireman had not been "convicted of theft" for purposes of Article 35.16(a)(2), supra. Given "evidence ... which might be called conflicting," a trial court has discretion to find, or for that matter refuse to find, facts

---

**2.** The trial court continued:

"... you know and I know that these cases, a lot of them would have been appealed and, if they were appealed, well, there had to be a judgment to appeal from, so those judgments must have been located somewhere else but, in this case, I don't know how much good that's going to do us because the judgments have all been burned, if that's where the judgments were."

It is not certain from this statement where exactly the trial court believed the judgments might have been located.

**3.** The record does not reveal over what court Judge Lozano presided in March of 1987, although we judicially know he was judge of the County Court at Law No. 6 in Bexar County. At any rate, neither party challenged his expertise to testify as he did.

**4.** *Casselman* addresses the question whether abstracts of judgments required by V.A.C.S., Article 6701d, § 152, to be provided to the Department of Public Safety, may justify "a prima facie presumption" of prior convictions for purposes of proving a driver is "an habitual violator of the traffic law" in a drivers license suspension proceeding under V.A.C.S., Article 6687b, § 22(b)(4). We do not understand *Casselman* in any way to prescribe proper form of a judgment of conviction in justice of the peace or corporation court. See, rather, former Articles 916 & 917, V.A.C.C.P. (1925), now Articles 45.49 & 45.50, V.A.C.C.P.; see also, *Ex parte Marple*, 141 Tex.Cr.R. 123, 147 S.W.2d 805 (1941); *Ex parte Leachman*, 150 Tex.Cr.R. 145, 199 S.W.2d 661 (1947); *Funderburk v. State*, 64 S.W. 1059 (Tex.Cr.App.1901).

such as would justify a challenge for cause. *Clark v. State*, 140 Tex.Cr.R. 25, 143 S.W.2d 378, at 382 (1940); see also *Marras v. State*, 741 S.W.2d 395, at 403 (Tex.Cr. App.1987); *Anderson v. State*, 633 S.W.2d 851 (Tex.Cr.App.1982). This must be so even though the purported basis of the challenge constitutes an absolute disqualification under Article 35.19, supra.

■ Appellant argues that in view of facts established, *viz:* that a plea of guilty was entered by someone on behalf of Tealer, and that on the same day, December 3, 1962, $25.00 was "PAID," "a presumption of regularity must prevail." In essence he thus argues that we must presume a judgment of conviction followed the entry of the plea, and that the $25.00 was in payment of a fine pursuant to that judgment, not the forfeiture of an earlier bond. For this proposition he cites *Frame v. State*, 615 S.W.2d 766, at 770 (Tex.Cr.App.1981) and *Green v. State*, 510 S.W.2d 919, at 921 (Tex.Cr.App.1974). Because nothing in the record rebuts this presumption that a judgment of conviction was entered, appellant maintains, Tealer should have been excused.

In *Green v. State*, supra, the defendant claimed the jury had been allowed to separate without his consent, in violation of Article 35.23, V.A.C.C.P. Finding no foundation in the record to support such a claim, this Court reiterated caselaw holding that "where the record is silent, there is a presumption that procedural rules were complied with." 510 S.W.2d at 921. We concluded that "[w]here procedural requirements do not affirmatively appear in the record to have been violated, a presumption of regularity must prevail." *Id.* In none of the cases listed in support of this rule is "the record silent," however, as to whether a judgment had been rendered and entered. What appellant invokes is an appellate presumption. But without a judgment in the record, an appellate court will not entertain the appeal, much less presume that judgment was duly rendered and entered. E.g., *Savant v. State*, 535 S.W.2d 190 (Tex.Cr.App.1976). See former Article 40.09, § 1, V.A.C.C.P., now Tex.R.

App.Proc., Rule 51(a). We do not deem the requirement of an adjudication of guilt to be one of those "procedural rules" presumptively honored in the face of a silent record.

The holding of *Frame v. State*, supra, counsels no differently. In *Frame* a venireman positively informed the trial court at a bench conference that he had been convicted of "theft of less than five dollars" when he was "thirteen or fourteen years old." Under Article 30 of the 1925 Penal Code, applicable at the time of the venireman's conviction, a thirteen year old could only be convicted of an adult offense upon a showing "that he had discretion sufficient to understand the nature and illegality of the act constituting the offense." Frame maintained the trial court erred in *sua sponte* excusing the venireman on the basis that he had been convicted for theft, because it had not been demonstrated that at the time the venireman was convicted the State had made the showing required by former Article 30. In this context, a panel of the Court invoked the presumption of procedural regularity, citing, *inter alia, Green v. State*, supra, to hold the trial court had not erred to find the venireman's conviction had been obtained in keeping with that procedural requirement. We did not presume the fact of conviction in the first instance, however, as appellant would have us do here. That fact was established from the mouth of the venireman himself.

By contrast, venireman Tealer could not testify she had been convicted of theft. While there is evidence someone pled guilty on her behalf, and paid a fine, there is no definitive proof a judgment was ever rendered thereon. We cannot say the trial court erred to find no judgment was ever entered. Nor can we say he erred to conclude in the absence of a judgment that Tealer was never convicted. In short, the trial court did not abuse its discretion to find upon this record that the venireman was not absolutely disqualified. Point of error one is overruled.

■ In his second point of error appellant alleges the trial court erred in con-

structively testifying at his trial, in violation of Tex.R.Cr.Evid., Rule 605. That rule forbids the presiding judge of a criminal trial from testifying as a witness during the course of that trial.

Just before 11:00 p.m. on the night of March 30, 1987, after the jury had returned a verdict of guilty in this cause, but before commencement of the punishment proceedings, appellant escaped from the custody of the Bexar County Jail. Shortly thereafter, a newspaper reporter telephoned the presiding judge for comment, and it was through this conversation that the judge learned of the escape. Sometime between 11:00 p.m. and midnight, the judge contacted Richard Burch, Clerk of the Court, and asked him to telephone each juror in the case to inform him or her an escape had occurred and that he or she would nevertheless be expected to appear as usual for court the next morning. Burch was able to reach nine of the twelve jurors.

The following morning, March 31, 1987, it was decided that trial would proceed in the absence of appellant pursuant to Article 33.03, V.A.C.C.P. Appellant does not now challenge that decision. The trial court brought the jury in and explained "that the defendant has voluntarily absconded and has voluntarily absented himself from the trial and I have decided to proceed with the trial in his absence, which is permitted under the law[.]" Early in the punishment phase hearing the State presented evidence of the jail escape, *sans* objection from defense counsel. The hearing carried over to the next day.

Meanwhile, on the night of March 31, appellant was apprehended and returned to custody. When the punishment hearing reconvened the next morning, April 1, 1987, appellant was in attendance. Defense counsel opened the hearing with an objection that in having the clerk of the court call the jurors two nights earlier, the trial court "in effect, through the clerk, became a witness in the case...." The trial court refused appellant's motion for mistrial, and made the following "findings" outside the presence of the jury:

"... One, it's my understanding that the defendant had the names and addresses of the jurors.

"Number two, it was clearly, in the Court's opinion, a definite possibility that the defendant might have gone to the residences of the jurors and might have done one or more of them physical harm, their lives were in danger, and that he probably knew that it would have caused a mistrial if one of them had been killed, and I felt that it would be completely irresponsible on this Court's part not to advise the jurors of the occurrence in order that they might take such steps as they may deem necessary to protect themselves."

Presentation of punishment evidence then continued, including testimony about appellant's recapture the night before, again, *sans* objection.

Appellant now contends that in having the clerk telephone jurors on the night of his escape to inform them of that event, the trial court transgressed Rule 605, supra. He cites no authority other than the rule itself.

"The question should be whether the judge's statement of fact is essential to the exercise of some judicial function or is the functional equivalent of witness testimony." 27 Wright & Gold, Federal Practice and Procedure: Federal Rules of Evidence § 6063, p. 353 (1990). It has been held that the testimony of a law clerk, when it carries the implicit imprimatur of the presiding judge, violates Rule 605, supra. *Kennedy v. Great Atlantic & Pacific Tea Co., Inc.*, 551 F.2d 593 (CA5 1977). The testimony in *Kennedy*, however, served no judicial function. The instant cause is distinguishable. Though in substance it did inform jurors of a relevant fact not yet in evidence pertaining to the issue of future dangerousness, Burch's telephone call had a purpose unrelated to the presentation of evidence at trial. The trial court believed appellant personally had access to "names and addresses of the jurors." We cannot say it was inappropriate for the trial judge, upon learning of appellant's escape, to be concerned for the safety of jurors, and to

act promptly on that concern. Under the circumstances, we hold that in instructing the clerk to inform jurors of appellant's escape, the trial judge acted within his judicial capacity, and did not "testify." Rule 605, supra, was not violated. Point of error two is overruled.[5]

■ Appellant complains in his third point of error that the trial court erred in failing to grant his motion for mistrial following what he contends was an allusion made during the prosecutor's summation to his decision not to testify in his own behalf. The trial court sustained appellant's objection to the argument, and instructed the jury to disregard it. On the present facts, we deem the instruction to have been sufficient.

During final argument at the guilt phase, the following colloquy appears:

"[PROSECUTOR]: ... He dragged her out, dragged her out of that kitchen where you see those tracks and laid her on the carpet and then he performed oral, anal and vaginal sex on her and then had an orgasm in her vagina. This all comes from Dr. DiMaio. *You heard no controversy. You heard no other version,* and then—

[DEFENSE COUNSEL]: Excuse me, Your Honor. I'm going to have to object to the—to [the prosecutor's] statement there was no other version. It's a comment on the defendant's failure to testify.

THE COURT: Just disregard about there being no other version. You may proceed.

[DEFENSE COUNSEL]: Additionally, Judge, we would move for a mistrial based on it.

THE COURT: That will be overruled.

[PROSECUTOR]: You heard the cross-examination. Both sides have the opportunity to cross-examine." [6]

Appellant did not object to the prosecutor's apparent qualification.

The evidence against appellant at the guilt phase of trial, though circumstantial, was fairly compelling. Vetter died in her own apartment as a result of multiple stab and cut wounds, once through the heart. She had been beaten about the face, probably by a right handed individual. (Appellant was shown to be right handed.) A large volume of blood was discovered on the floor of the kitchen, and a wide smear of blood led from the kitchen to the carpet in the living room, where her nude body was found in a "silhouette" of blood. Appellant's palm- and bloody footprints were lifted from the scene. His right palm print was taken from the handle of a butcher knife, the apparent murder weapon, found hidden in the apartment. A hair was recovered which was consistent with that of appellant. One witness saw appellant in the laundry room of the apartment complex a few days before the killing, and he was also observed apparently watching law enforcement officers processing the murder scene a short time after.

There was testimony, *inter alia,* from a number of investigating officers, two fingerprint examiners, two forensic serologists and a fiber analyst. Dr. DiMaio, Chief Medical Examiner for Bexar County, personally performed the autopsy upon

---

5. Appellant couches his point of error purely in terms of a violation of Rule 605, supra, and we resolve it just so. We do not mean to suggest thereby that a trial court can never abuse its discretion when it informs jurors of material facts even in exercise of a judicial function.

That was not the case here. In hindsight it is possible to imagine ways in which the trial court might have secured the safety of the jurors without alerting them to the fact of appellant's escape. However, we would not necessarily hold a trial court to what seems to us the most efficacious course of action. Under circumstances such as those presented, there is something to be said for expediency.

Moreover, Burch only told jurors in barest outline what they were provided with in detail just hours later in due course of the punishment evidence. The fact of appellant's escape was not contested. Counsel for appellant failed to object when, at the outset of the punishment phase, the trial court informed the jury of the reason for appellant's absence. Any error in informing the jury of appellant's escape was, in our estimation, harmless beyond a reasonable doubt. Tex.R.App.Proc., Rule 81(b)(2).

6. All emphasis supplied unless otherwise indicated.

Vetter. He testified that seminal fluid was found in Vetter's mouth, rectum and vagina, and sperm was present in her vagina. Although the serologist who attempted to type the seminal fluid was unable to do so, cross-examination of none of these witnesses revealed any evidence positively to contradict the prosecutor's theory of the case. Appellant presented no evidence at the guilt phase of trial.

The excerpt from the prosecutor's argument about which appellant complains came at the conclusion of a lengthy narrative of what he believed the evidence showed happened in Vetter's apartment on the night of the killing. In context, by making the underscored remark, the prosecutor may well have intended to convey, and the jury may readily have taken him to mean, not that appellant failed to testify, but simply that no evidence was produced from any source to undermine his reconstruction of the killing. As such, the remark was not necessarily a comment on appellant's failure to testify. To the extent the jury may have so interpreted it, any harm which might otherwise have resulted was cured by the trial court's prompt instruction to disregard. *Gardner v. State*, 730 S.W.2d 675, at 699–700, & n. 13 (Tex. Cr.App.1987). Point of error three is overruled.

█ In his fourth point of error appellant contends the trial court should have granted his motion for mistrial after the prosecutor erroneously injected facts outside the record during his final argument at the punishment phase. Without authority, he contends the trial court's instruction to disregard the comment was insufficient to cure the error. We disagree.

At the punishment phase, besides presenting evidence of appellant's escape, the State presented a pen packet reflecting appellant was convicted for two offenses committed in 1981, rape and burglary of a habitation. The State also established that in September of 1986, the same month appellant raped and killed Vetter, he burglarized three other residences and raped the occupants therein, and committed two other aggravated robberies against convenience store clerks. Half a dozen witnesses testified to appellant's poor reputation for being peaceable and lawabiding. A Bexar County Jail inmate recounted an incident in which appellant raped him in a shared cell during appellant's incarceration pending trial. After cataloging the evidence, the prosecutor in his summation continued:

"... What kind of man do we have here? Is this a man society can feel confident with, even in the population of the jail? * * * He's a bully. He picks on people smaller or more helpless than himself. Picks on women, women who are home by themselves with young children around, with no man to protect them. At night, stalking around. How many times did you hear, 9:00 o'clock, 9:30, 2:00 o'clock in the morning. There is a pattern there. He uses a cover of darkness to do his dirty deeds. You see, when you look at it, you understand why now there is a capital murder law. You understand now why we have such law on the books, because it fits him like a glove. Fits him to a tee. *I can't think of a case where the second question, where there's been this kind of evidence, cannot ever be answered Yes.*

[DEFENSE COUNSEL]: Your Honor, I object to that as being outside the record.

THE COURT: All right. That will be sustained.

[DEFENSE COUNSEL]: We would ask the jury to disregard.

THE COURT: Please disregard.

[DEFENSE COUNSEL]: And we will make a motion for mistrial.

THE COURT: It will be overruled.

[PROSECUTOR]: In light of this evidence, could there be any other answer to Special Issue No. 2 than an affirmative answer, a Yes answer? ..."

Shortly thereafter the prosecutor concluded:

"I think all of you remember the evidence. I think all of you know what we are talking about. All of you know what [appellant] is really like and, based on the evidence, again, we are not asking

you to do something because we're asking you; we are asking you to do this, to do your duty, to follow your oath, based on the evidence presented to you."

While the language underscored above is somewhat opaque, we agree with appellant that it tends to communicate a personal opinion on the prosecutor's part as to the strength of the State's punishment evidence relative to other capital cases, information to which the jury is not privy. This is analogous to argument that the jury should rely upon the "expertise" of the prosecutor in matters of punishment and for that reason follow his recommendation—argument the Court has held to be improper. *Irving v. State*, 573 S.W.2d 5 (Tex.Cr.App.1978). Such argument is subject to cure, however, by an instruction to disregard. *Hughes v. State*, 563 S.W.2d 581, at 587 (Tex.Cr.App.1978). See also, generally, *Gardner v. State*, supra, at 696. Especially in light of the prosecutor's further comments stressing that the jury should base its verdict on the evidence alone, we hold that error was cured by the trial court's immediate instruction to the jury to disregard, and overrule appellant's fourth point of error.

■ In his fifth point of error appellant maintains the trial court erred in overruling his objection to the prosecutor's final argument at punishment which "asked the jury to speculate as to the possibility of an extraneous offense." He relies upon *Darden v. State*, 629 S.W.2d 46, at 51–52 (Tex. Cr.App.1982).

The prosecutor argued:

"You're in a better position than any of us to judge the credibility of the witnesses, to weigh their testimony, to understand what they went through at the hands of one person, one man. All of this havoc, all of this trauma created by one person. Is he gonna continue to do this in the future? It's not the question. Is it probable? That's all the question asks. My question to you, rhetorically, is is there any doubt in your mind? Let's just think. *What if he hadn't been captured yesterday?* You don't have to answer any question to me now."

Appellant's objection that this called for speculation was overruled by the trial court.

Article 37.071(b)(2), supra, requires the factfinder to determine "whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society"—what we sometimes refer to in shorthand as the likelihood of future dangerousness. Thus, part of the factfinder's function at the punishment phase of a capital trial is necessarily predictive, if not speculative. Perhaps the best evidence of a likelihood of future dangerousness is a pattern of criminally violent behavior in the past. In the argument complained of here the prosecutor simply invited the jury to view one criminal act in evidence—appellant's escape following his guilty verdict for capital murder—as a rhetorical framework for considering evidence of appellant's other past behavior in making its assessment of probable future conduct. In context of a capital murder punishment proceeding, this amounts to no more than urging the jury to make a "reasonable deduction from the evidence." E.g., *Darden v. State*, supra, at 52. The trial court did not err in failing to sustain appellant's objection. Appellant's fifth point of error is overruled.

■ In his sixth and last point of error appellant contends that Article 37.071, supra, violates the Eighth Amendment "because it contains no provisions for directing and instructing the jury's consideration of mitigating circumstances at the punishment phase of trial." By this we take him to mean the statute is unconstitutional in that it fails to provide a vehicle by which a jury can give effect to evidence having mitigating impact beyond the scope of the special issues. *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989).

Appellant presented no evidence, mitigating or otherwise, at either the guilt or the punishment phase of trial. No State's evidence had any mitigating significance even within the scope of special issues, much less beyond. Irrespective of any constitutional deficiency inherent in the statute,

therefore, insofar as the record on appeal discloses,[7] appellant has not been sentenced to death in contravention of the Eighth Amendment. *Franklin v. Lynaugh*, 487 U.S. 164, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988). In the premises, we hold that appellant has no standing to challenge constitutionality of Article 37.071, supra. See *Briggs v. State*, 789 S.W.2d 918, at 923–24 and nn. 7 & 8 (Tex.Cr.App.1990). Appellant's final point of error is overruled.

The judgment of the trial court is affirmed.

CAMPBELL, J., concurs in the result reached in the disposition of appellant's point of error # 4, believing that the argument of the prosecutor was perfectly proper as a reasonable deduction from the evidence, rather than an argument based upon personal opinion.

TEAGUE, BERCHELMANN and STURNS, JJ., not participating.

---

**7.** The appellate record does not show whether mitigating evidence having significance beyond the scope of special issues did exist which, however, for reasons, tactical or otherwise, was not offered. Hence, appellant does not argue on appeal, nor would we be equipped to resolve, Eighth or Sixth Amendment questions that might be raised by that scenario. See *May v. Collins*, 904 F.2d 228 (C.A.5 1990); *DeLuna v. Lynaugh*, 890 F.2d 720 (C.A.5 1990). Those questions are left for another day.