Criminal Case Template














COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS





RAMON MEDINA,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee.
§



§


§


§


§

No. 08-01-00430-CR


Appeal from the


168th District Court


of El Paso County, Texas


(TC# 990D03266)




MEMORANDUM OPINION



 This is an appeal from a jury conviction for the offense of aggravated sexual assault
of a child. The jury assessed a probated sentence of ten (10) years. We affirm the judgment
of the trial court.

I. SUMMARY OF THE EVIDENCE


 Appellant and his wife, Ruth Ann, married in 1997. Their child, Brandon, and two
of Ruth Ann's children from a former marriage, the seven-year-old female victim and a four-year-old boy, Andrew, lived with them in their home. Ruth Ann's sister, Lisa Wenzel, came
to visit for several weeks in the summer of 1999. During her stay, Wenzel stayed in an
upstairs bedroom while the victim and Andrew slept in another bedroom upstairs. Brandon
slept in a crib in Appellant's and his wife's master bedroom on the first floor. 

 On June 24, 1999, Appellant, Ruth Ann, and Wenzel went out to a club. The children
were left at home with the children's grandmother. Ruth Ann had to report to her nursing
job at the hospital at 11 p.m. She left the club at 9:45 p.m. while Appellant and Wenzel
remained at the club until after 1 p.m. They went home and the grandmother left. Upon
arrival, the children were asleep in the living room with their grandmother. Wenzel took
Andrew upstairs. As Appellant was carrying the victim up the stairs, he tripped. Wenzel
thought Appellant was intoxicated and she took Brandon out of his crib in the downstairs
master bedroom and took him to her room. 

 Wenzel testified that Appellant came to her door twice and knocked on her bedroom
door. She called her husband on the phone and was told to lock the door. She then heard the
front door of the house open and she heard a female voice. The young victim knocked on
her door and came into her room followed by an upset Ruth Ann. The police were called. 
 Ruth Ann testified that she was released early from the hospital and she came home
sometime after 2 a.m. She noticed that the door to the master bedroom was closed. She
thought this was unusual because the door was only closed when she and Appellant were
being intimate. When she opened the bedroom door and turned on the light, she saw
Appellant lying down on the bed. His pants and underwear were pulled down. The victim
was kneeling beside him on the bed. His penis was erect in view of the victim. She pulled
the child off of the bed and away from the bedroom. When asked what had happened, the
victim stated tearfully that Appellant had asked her to suck on his penis. Ruth called the
emergency number. Appellant began asking for his car keys but she would not give them to
him. 

 The victim testified that she went to sleep on the couch in the living room. She awoke
as Appellant carried her upstairs. As she was sleeping on her bed, she wakened when
Appellant carried her back downstairs. He took her into the master bedroom and put her on
the bed. He pulled down his pants and told her to suck his "private" like a lollipop. She
refused, and he pushed her head down and put his penis in her mouth causing her to choke. 
He then kissed her. Her mother came into the room. As the police were called she was taken
upstairs to Wenzel's room. Her mother would not give the keys to Appellant. 

 Appellant testified on his own behalf. He stated that he had only had four drinks at
the club and he was not intoxicated when he got home. He took the victim up to her bed and
then went downstairs to the master bedroom. He awoke when Ruth Ann turned on the light
and said to him, "I can't believe you did this," and he replied, "Did what?" She saw that the
victim was on the bed, but he testified that he did not know she was there. He related that
in the past, she had often snuck into the bed with him and his wife. He denied any improper
conduct with the victim. 


II. DISCUSSION


 In Issues No. One through Four, Appellant contends that the court abused its
discretion by denying his request to cross-examine Ruth Ann about her purported sexual
victimization as a child, her physical, sexual, and emotional victimization by a prior husband,
her previous courtroom testimony, and matters revolving around the couple's bankruptcy. The trial court's ruling regarding the admissibility of evidence is reviewed for an
abuse of discretion, and absent an abuse of discretion, the court's decision to admit evidence
will not be overruled on appeal. Levario v. State, 964 S.W.2d 290, 296 (Tex. App.--El Paso
1997, no pet.). An abuse of discretion occurs only if the decision was made without
reference to any guiding rules or principles or was reached in an arbitrary or unreasonable
manner. Montgomery v. State, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). If the court's
ruling was within the "zone of reasonable disagreement," the reviewing court should not
disturb the decision. Id. at 391. 

 The United States Constitution provides, in part, "[i]n all criminal prosecutions, the
accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S.
Const. amend. VI. The Fourteenth Amendment to the United States Constitution makes the
right to confrontation applicable to the states. Pointer v. Texas, 380 U.S. 400, 403, 85 S.Ct.
1065, 13 L.Ed.2d 923 (1965). The Confrontation Clause ensures "the reliability of the
evidence against a criminal defendant by subjecting it to rigorous testing in the context of an
adversary proceeding before the trier of fact." See Maryland v. Craig, 497 U.S. 836, 845,
110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). Cross-examining an adverse party allows the jury
to assess a witness's credibility and exposes facts which the jury may use in its assessment. 
See Carroll v. State, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996). While the Sixth
Amendment protects an accused's right to cross-examine witnesses, it does not prevent a trial 

judge's limiting cross-examination on "concerns about, among other things, harassment,
prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or
only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679, 106 S.Ct. 1431, 89
L.Ed.2d 674 (1986); see also Carroll, 916 S.W.2d at 498. The trial court may also limit
cross-examination when it determines that the probative value of such cross-examination is
clearly outweighed by a danger of unfair prejudice, based upon an application of Rule 403
of the Texas Rules of Evidence. Kesterson v. State, 997 S.W.2d 290, 292-94 (Tex. App.--Dallas 1999, no pet.).

 With regard to the first two contentions, that of prior sexual abuse of Ruth Ann
Medina and abuse during her first marriage, Appellant requested that he be allowed to cross-examine her about these abuses in order to test her perceptions regarding what she saw on
the 24th of June. The court ruled that any probative value of such cross-examination was
outweighed by the fact that such issues would serve to confuse the jury with regard to the real
issues of the case. Appellant then made a bill of the excluded testimony. She testified that
while she had no memory of being abused as a child, she had been told that she had been so
abused. She also related that her former husband had physically, emotionally, and sexually
abused her. He had sexually abused her sister also. 

 Initially, we note that Ruth Ann lacked any personal recollection of childhood abuse. 
As such, testimony regarding this matter was hearsay and we can perceive no exception that
would allow its admittance. See Tex. R. Evid. 801, 803. 

 Notwithstanding that, the evidence of childhood abuse and abuse in her prior marriage
was offered to show how these past life experiences would have caused her to perceive the
events of that night. In effect, Appellant contends that these past events (1) would shed light
on how the witness would have interpreted what she saw. Under Tex. R. Evid. 403, the trial
court may exclude relevant evidence that would confuse the issues, mislead the jury, cause
undue delay, or needlessly present cumulative evidence, and the trial court so found. We
agree with the court's assessment of this evidence. The question of how Ruth Ann would
have perceived or interpreted what she was seeing, was not relevant to what she saw in the
bedroom that night and would have served merely to confuse the issues in the case. Issues
No. One and Two are overruled.

 In Issue No. Three, Appellant maintains that the trial court erred by disallowing
testimony regarding Ruth Ann's courtroom experience in testifying during her prior divorce
in that it tended to explain her courtroom demeanor and may have caused the jury to view her
credibility in a different light. During cross-examination, Ruth Ann was asked the number
of times she had testified in the past. The court sustained the State's relevance objection. 
Appellant made a bill and she stated that she had testified before a judge five times during
the divorce proceedings. Appellant did not pose to the court the theory of relevance now
advanced on appeal. Accordingly, this contention has not been preserved on appeal. See
Driggers, 940 S.W.2d at 710. Issue No. Three is overruled.

 In Issue No. Four, Appellant complains that the trial court improperly limited
Appellant's cross-examination of Ruth Ann with regard to the couple's bankruptcy. On
cross-examination, Ruth Ann testified that prior to the incident at their house, she and
Appellant were considering buying another car and a house notwithstanding the fact they had
filed for bankruptcy. She was then asked if she had told the police of these potential
purchases in order to give the impression the marriage was in good shape prior to the
incident. She responded that it was true that they were considering the purchases. After she
admitted that they had filed for bankruptcy, Appellant's counsel sought to elicit the details
of the bankruptcy. The court sustained the State's relevancy objection. 

 Later, Appellant again urged the court to allow questioning about the bankruptcy in
order to impeach her statements to the police that the marriage was in good shape and they
were planning to buy a house and a car. The court adhered to its prior ruling. During the bill
of exceptions, Ruth Ann stated that the bankruptcy extinguished all their debts and they owed
approximately $80,000--the sum of both their salaries. They rented their home and they had
not discussed possible financing for the new home. 

 On appeal, Appellant asserts that this testimony was relevant to show Ruth Ann's
motive to accuse Appellant of the crime in question in order to avoid a costly divorce and the
testimony was relevant to rebut her statements to the police that the marriage was stable and
happy. With regard to the question of motive, Appellant did not raise this contention at trial
and it had not been preserved on appeal. Driggers, 940 S.W.2d at 710.

 The jury was aware that bankruptcy proceedings had been filed and the specific details
of the proceeding would have been cumulative of the fact of the bankruptcy. Accordingly,
Issue No. Four is overruled.

 In Issues No. Five through Eight, Appellant asserts that the court improperly
commented on the weight of the evidence, and erred in failing to grant a mistrial for such
comment. Appellant also contends that the comment was the functional equivalent of
testimony, and the court erred in failing to grant a mistrial on that ground. During the cross-examination of Ruth Ann, the following exchange occurred:

 DEFENSE: You were going to take a Chapter 13?


 WITNESS: I don't know if it's 7 or 13, but yes.


 STATE: Your Honor, I'm going to object to the relevance of this
question.


 COURT: I'm going to sustain the objection.



 DEFENSE: Your Honor, the relevance is they couldn't possibly buy a house
or car. They just took bankruptcy.


 COURT: There's many ways to buy a home. 


 No objection was made to this comment. The victim then testified. At the close of
her direct testimony, Appellant made a motion for mistrial which was denied. When the
State rested, Appellant made another motion for mistrial. Both motions were denied. In
order to preserve a complaint for appellate review, the accused must timely object or
otherwise bring the matter to the court's attention. See Blue v. State, 41 S.W.3d 129, 131
(Tex. Crim. App. 2000). These types of errors are readily corrected by instruction from the
court to disregard. See Bauder v. State, 921 S.W.2d 696, 698 (Tex. Crim. App. 1996). 
Accordingly, Appellant has waived his contention that the court's comment was a comment
on the weight of the evidence. Issues No. Five and Six are overruled. 

 In Issues No. Seven and Eight, Appellant argues that the court's comment was
testimonial and a mistrial should have been granted on that ground. Tex. R. Evid. 605
provides: "The judge presiding at the trial may not testify in that trial as a witness. No
objection need be made in order to preserve the point." This rule not only prohibits direct
testimony by the judge but also testimony which "is the functional equivalent of witness
testimony." Hammond v. State, 799 S.W.2d 741, 746 (Tex. Crim. App. 1990) cert. denied,
501 U.S. 1259, 111 S.Ct. 2912, 115 L.Ed.2d 1076 (1991). In Hammond, the presiding judge
had the clerk of the court contact the jurors to tell them that the defendant had absconded,
but they were to report to the court the next morning notwithstanding the defendant's
disappearance. Id. In addressing this communication as a Rule 605 violation, the Court of
Criminal Appeals held that the judge's statement, while not in evidence at the time, served
a judicial purpose unrelated to any desire to present unsworn testimony to the jurors. As
such, Rule 605 was not violated. Id. at 746-47. We find that the complained-of comment
served a judicial function in that it was a ruling on the evidence and not a situation where the
judge stepped down to testify. At most this was a comment on the weight of the evidence--an
issue not preserved on appeal. Issues No. Seven and Eight are overruled.

 In Issues No. Nine and Ten, Appellant maintains that the trial court erred by barring
Appellant from rebutting evidence that the victim's panties, which were found in her bed on
the day of the incident, with evidence that the victim routinely discarded her panties in her
sleep. Appellant also contends that the court erred by barring Appellant from adducing
evidence that the victim had played with her brothers' penises, thus explaining her
knowledge of male genitalia. At trial, the State adduced testimony that the police found the
victim's panties and her shorts on the bed in the upstairs bedroom where the victim and
Andrew had been sleeping. 

 The victim also testified that her mother had taught her about male and female private
parts. She testified that when Appellant pulled down his pants, his "private" was round and
was the same color as the color of his face skin. On cross-examination, she was asked if she
had ever helped her mother bathe Andrew and Brandon. She replied that she had not. She
stated that she had never seen their private parts. On direct examination, the victim did not
testify whether or not Appellant took off her shorts and panties. On cross-examination, she
was asked what happened regarding her shorts and panties and she stated that the Appellant
had taken them off in the master bedroom.

 During the presentation of the State's case, Appellant called his ten-year-old daughter
to the stand. In response to the court's inquiry regarding the nature of her testimony, counsel
responded that she would testify that it was the victim's habit to remove her underwear at
night. Counsel posited that this was relevant to show how and where the victim's underwear
was removed that night. The court disallowed the evidence as an irrelevant attack upon the
victim. 

 Appellant's daughter testified regarding the victim's bad reputation for truth and
veracity. Defense counsel then informed the court that he desired to bring out testimony
from his daughter that the victim had touched her brothers' penises to rebut the victim's
earlier testimony on cross-examination that she had never seen their penises. The court
disallowed this evidence. Appellant made a bill of particulars wherein his daughter stated
that she had spent the night with the victim on twelve different occasions and that she would
take off her panties at night and then put them back on when her parents got up. The child
also stated that the victim would touch her little brothers' private parts and encouraged the
witness and her sister to do so also. The court disallowed this evidence. 

 A party may not bootstrap an impeachment attempt if the collateral matter involved
is initially elicited by a party during the cross-examination of the witness. Hammett v. State,
713 S.W.2d 102, 105 n.4 (Tex. Crim. App. 1986). In this instance, Appellant elicited from
the victim that Appellant had removed the panties in the downstairs master bedroom as well
as never having seen her brothers' penises. As such the impeachment attempt was improper
and was correctly disallowed.

 Furthermore, Appellant's assertion that the his daughter's testimony was admissible
as habit on the part of the victim is also unfounded. Tex. R. Evid. 406 provides:

 Evidence of the habit of a person or of the routine practice of an organization,
whether corroborated or not and regardless of the presence of eyewitnesses, is
relevant to prove that the conduct of the person or organization on a particular
occasion was in conformity with the habit or routine practice.


 The offering party must demonstrate a regular practice of an individual of meeting a
particular kind of situation with a specific kind of conduct. Anderson v. State, 15 S.W.3d
177, 183 (Tex. App.--Texarkana 2000, no pet.). In this instance, Appellant's daughter did
not relate when the twelve times occurred or if the victim removed her panties on each
occasion or on only one occasion. As such, we find that Appellant has failed to establish the
necessary predicate for habit testimony. Accordingly, Appellant's Issues No. Nine and Ten
are overruled. 

 Having overruled each of Appellant's issues on review, we affirm the judgment of the
trial court.

September 18, 2003


 

 
 RICHARD BARAJAS, Chief Justice

Before Panel No. 3

Barajas, C.J., Larsen, and Chew, JJ.


(Do Not Publish)
1. Appellant also contends that the past abuse was relevant to show Ruth Ann's motive for testifying. As
this theory of admissibility was not presented to the trial court, this assertion has not been preserved for review. See
Driggers v. State, 940 S.W.2d 699, 710 (Tex. App.--Texarkana 1997, pet. ref'd) (opinion on reh'g).