ACCEPTED
05-14-01315-CR
FIFTH COURT OF APPEALS
DALLAS, TEXAS
1/21/2015 3:58:48 PM
LISA MATZ
CLERK

5th Court of Appeals
FILED: 1/22/2015
Lisa Matz, Clerk

**No. 05-14-01315-CR**
**No. 05-14-01316-CR**

*IN THE COURT OF APPEALS*
*FOR THE FIFTH DISTRICT OF TEXAS*
*AT DALLAS, TEXAS*

---

**DANIEL GAYTAN,**
**Appellant**

**vs.**

**THE STATE OF TEXAS,**
**Appellee**

---

*On appeal from the 204th Judicial District Court*
*of Dallas County, Texas*
*In Cause Nos. F14-56218-Q and F13-56007-Q*

---

**APPELLANT'S BRIEF**

---

*Counsel of Record:*

Lynn Richardson
Chief Public Defender
Dallas County, Texas

Katherine A. Drew
Chief, Appellate Division
Dallas County Public Defender's Office

Julie Woods
Assistant Public Defender
State Bar No. 24046173
Frank Crowley Courts Building
133 N. Riverfront Blvd., LB-2
Dallas, Texas 75207-4399
(214) 653-3550 *(phone)*
(214) 875-2363 *(fax)*
Julie.Woods@dallascounty.org

*Attorneys for Appellant*

# LIST OF PARTIES

**APPELLANT**
Daniel Gaytan

**APPELLEE**
The State of Texas

**DEFENSE COUNSEL AT TRIAL**
**At the original plea hearing in 05-14-01316-CR:** Thomas Andrew Gatlin
8344 East R.L. Thornton Freeway, Suite 404
Dallas, Texas 75228

**At the revocation hearing in 05-14-01316-CR and the plea hearing in 05-14-01315-CR:** Demarcus Ward
2201 Main Street, Suite 1006
Dallas, Texas 75201

**STATE'S ATTORNEY AT TRIAL**
**At the original plea hearing in Cause No. 05-14-01316-CR:** Gaelle Lauriston
**At the revocation hearing in Cause No. 05-14-01316-CR and the plea hearing in Cause No. 05-14-01315-CR:** Andrew Anagnostis
Dallas County District Attorney's Office
Frank Crowley Courts Building
133 N. Riverfront Blvd., LB-19
Dallas, Texas 75207-4399

**APPELLANT'S ATTORNEY ON APPEAL**
Julie Woods
Dallas County Public Defender's Office
Frank Crowley Courts Building
133 N. Riverfront Blvd., LB-2
Dallas, Texas 75207-4399

**STATE'S ATTORNEY ON APPEAL**
Susan Hawk (or her designated representative)
Dallas County District Attorney's Office
Frank Crowley Courts Building
133 N. Riverfront Blvd., LB-19
Dallas, Texas 75207-4399

# TABLE OF CONTENTS

LIST OF PARTIES .............................................................................................. ii

INDEX OF AUTHORITIES .................................................................................v

STATEMENT OF THE CASE ..............................................................................1

ISSUES PRESENTED...........................................................................................2

STATEMENT OF FACTS .....................................................................................3

SUMMARY OF ARGUMENT .............................................................................5

ARGUMENT .........................................................................................................7

    POINT OF ERROR 1, RESTATED............................................................7

        *The presiding judge violated Rule 605 of the Texas Rules*
        *of Evidence by testifying as a witness in Appellant's*
        *cases.*

    POINT OF ERROR 2, RESTATED............................................................7

        *The trial court abused its discretion by considering*
        *evidence outside the record in deciding Appellant's*
        *sentences in these causes.*

    POINT OF ERROR 3, RESTATED..........................................................18

        *The trial court's abandonment of its role as a neutral*
        *arbiter deprived Appellant of his right to due process*
        *under the Fourteenth Amendment of the United States*
        *Constitution.*

    POINT OF ERROR 4, RESTATED..........................................................18

        *The trial court's abandonment of its role as a neutral*
        *arbiter deprived Appellant of his right to due course of*
        *law under Article I, § 19 of the Texas Constitution.*

    POINT OF ERROR 5, RESTATED..........................................................34

        *The trial court arbitrarily refused to consider the full*
        *range of punishment in these causes in violation of*
        *Appellant's right to due process.*

POINT OF ERROR 6, RESTATED........................................................................34

*The trial court arbitrarily refused to consider the full range of punishment in these causes in violation of Appellant's right to due course of law.*

POINT OF ERROR 7, RESTATED........................................................................37

*The Court should reform the judgment in Appellate Cause No. 05-14-01316-CR.*

PRAYER ...........................................................................................................39

CERTIFICATE OF SERVICE .............................................................................39

CERTIFICATE OF COMPLIANCE......................................................................40

# INDEX OF AUTHORITIES

**Cases**

*Allen v. State,*
No. 05-12-00672-CR, 2013 Tex. App. LEXIS 4701 (Tex. App.—Dallas Apr. 11, 2013, no pet.) (mem. op., not designated for publication).....................................19

*Asberry v. State,*
813 S.W.2d 526 (Tex. App.—Dallas 1991, pet. ref'd)........................................37

*Avilez v. State,*
333 S.W.3d 661 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) ..................25

*Beasley v. State,*
902 S.W.2d 452 (Tex. Crim. App. 1995)............................................................16

*Bethany v. State,*
814 S.W.2d 455 (Tex. App.—Houston [14th Dist.] 1991, no pet.)....................19

*Bigley v. State,*
865 S.W.2d 26 (Tex. Crim. App. 1993)..............................................................37

*Brewer v. State,*
572 S.W.2d 719 (Tex. Crim. App. [Panel Op.] 1978) ........................................20

*Brown v. State,*
122 S.W.3d 794 (Tex. Crim. App. 2003)..................................................... 20, 24

*Brumit v. State,*
206 S.W.3d 639 (Tex. Crim. App. 2006)..................................................... 18, 36

*Charboneau v. State,*
No. 05-13-00340-CR, 2014 Tex. App. LEXIS 13923 (Tex. App.—Dallas Dec. 30, 2014, no pet. h.) (mem. op., not designated for publication)........................24

*Dockstader v. State,*
233 S.W.3d 98 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) ............ 20, 24

*Earley v. State,*
855 S.W.2d 260 (Tex. App.—Corpus Christi 1993, pet. dism'd as improvidently granted)...............................................................................................................36

*Ex parte Brown*,
    158 S.W.3d 449 (Tex. Crim. App. 2005)........................................................................37

*Gagnon v. Scarpelli*,
    411 U.S. 778 (1973) ........................................................................ 18, 36

*Gonzales v. State*,
    No. 05-02-00478-CR, 2003 Tex. App. LEXIS 6740 (Tex. App.—Dallas Aug. 6,
    2003, pet. ref'd) (not designated for publication) .................................................17

*Grado v. State*,
    445 S.W.3d 736 (Tex. Crim. App. 2014)..................................................... 18, 36

*Guerrero v. State*,
    143 S.W.3d 283 (Tex. App.—Waco 2004, no pet.).............................................19

*Guin v. State*,
    209 S.W.3d 682 (Tex. App.—Texarkana 2006, no pet.) ............................ 19, 24

*Hammond v. State*,
    799 S.W.2d 741 (Tex. Crim. App. 1990)............................................................13

*Harris v. State*,
    No. AP-76,810, 2014 Tex. Crim. App. Unpub. LEXIS 517 (Tex. Crim. App.
    2014) (not designated for publication)................................................................17

*Hayden v. State*,
    296 S.W.3d 549 (Tex. Crim. App. 2009).............................................................15

*Hensarling v. State*,
    829 S.W.2d 168 (Tex. Crim. App. 1992).............................................................13

*Hickman v. State*,
    Nos. 05-10-01250-CR and 05-10-01251-CR, 2013 Tex. App. LEXIS 9323
    (Tex. App.—Dallas July 29, 2013, no pet.) (mem. op., not designated for
    publication)..........................................................................................................16

*In re Murchison*,
    349 U.S. 133 (1955) .............................................................................................18

*In re Salgado*,
    53 S.W.3d 752 (Tex. App.—El Paso 2001, orig. proceeding) ...........................15

*Jackson v. State*,
   314 S.W.3d 118 (Tex. App.—Houston [1st Dist.] 2010, no pet.) .......................17

*Jackson v. State*,
   Nos. 05-13-00579-CR and 05-13-00580-CR, 2014 Tex. App. LEXIS 9059
   (Tex. App.—Dallas Aug. 14, 2014, no pet.) (mem. op., not designated for
   publication).................................................................................................... 16, 17

*Jasper v. State*,
   61 S.W.3d 413 (Tex. Crim. App. 2001)..............................................................20

*Jefferson v. State*,
   803 S.W.2d 470 (Tex. App.—Dallas 1991, no pet.).............................................36

*Lawrence v. State*,
   No. 05-10-00083-CR, 2011 Tex. App. LEXIS 2971 (Tex. App.—Dallas Apr. 20,
   2011, pet. ref'd) (mem. op., not designated for publication)........................ 13, 14

*Martinez v. State*,
   327 S.W.3d 727 (Tex. Crim. App. 2010)..............................................................17

*Moreno v. State*,
   900 S.W.2d 357 (Tex. App.—Texarkana 1995, no pet.) .............................. 21, 24

*O'Quinn v. Hall*,
   77 S.W.3d 438 (Tex. App.—Corpus Christi 2002, no pet.) ................... 13, 14, 15

*Peterson v. State*,
   No. 05-12-01417-CR, 2013 Tex. App. LEXIS 13282 (Tex. App.—Dallas Oct.
   24, 2013, no pet.) (mem. op., not designated for publication)..................... 18, 20

*State ex rel. Rosenthal v. Poe*,
   98 S.W.3d 194 (Tex. Crim. App. 2003)..............................................................19

*Taylor v. State*,
   Nos. 05-13-01369-CR and 05-13-01370-CR, 2014 Tex. App. LEXIS 13918
   (Tex. App.—Dallas Dec. 30, 2014, no pet. h.) (mem. op., not designated for
   publication).................................................................................................... 20, 26

*Urbano v. State*,
   837 S.W.2d 114 (Tex. Crim. App. 1992)..............................................................17

*Wilson v. State*,
    Nos. 05-10-01362-CR, 05-10-01363-CR, and 05-10-01364-CR, 2011 Tex. App.
    LEXIS 9702 (Tex. App.—Dallas Dec. 12, 2011) (mem. op., not designated for
    publication).......................................................................................... 19, 20, 24

**Statutes**

TEX. CODE CRIM. PROC. art. 37.07, § 3(a) .............................................................15

TEX. PENAL CODE § 12.33..........................................................................................36

TEX. PENAL CODE § 30.02(c)(2) ...............................................................................36

**Constitutional Provisions**

TEX. CONST. art. I, § 19................................................................................... 18, 36

U.S. CONST. amend. XIV ................................................................................ 18, 36

**Rules**

TEX. R. APP. P. 43.2(b)...............................................................................................37

TEX. R. EVID. 605.......................................................................................................12

**Miscellaneous**

http://www.dallascounty.org/department/csc/cats.php (last visited January 13,
    2015).....................................................................................................................5

http://www.prisonoffenders.com/texas_syndicate.html (last visited January 21,
    2015)...................................................................................................................17

**TO THE HONORABLE COURT OF APPEALS**:

**COMES NOW** Appellant, Daniel Gaytan, and submits this brief on appeal from two convictions for burglary of a habitation in the 204th Judicial District Court of Dallas County, Texas, the Honorable Lena Levario, judge presiding.

## STATEMENT OF THE CASE

In 2013 a grand jury indicted Appellant for burglary of a habitation. (CR2: 9).[1] Appellant pleaded guilty to the charge. (CR2: 26-29). Pursuant to a plea bargain agreement, the court placed Appellant on deferred adjudication probation for a period of five years. (CR2: 20-25).

In 2014 a grand jury indicted Appellant for another burglary of a habitation offense. (CR1: 7). The State subsequently filed a motion to adjudicate in the 2013 burglary of a habitation case. (CR2: 49-50). Appellant pleaded true to the motion to adjudicate. (CR2: 58-59). Appellant also pleaded guilty and judicially confessed to the 2014 burglary charge without the benefit of a plea bargain agreement. (CR1: 21-25).

The judge adjudicated Appellant guilty in the 2013 burglary case and sentenced him to 15 years' imprisonment in both cases. (CR1: 27-29; CR2: 61-63; RR4: 55-57). Appellant timely filed his notice of appeal in each case. (CR1: 36;

---

[1] "CR1" refers to the clerk's record filed in Appellate Cause No. 05-14-01315-CR. "CR2" refers to the clerk's record filed in Appellate Cause No. 05-14-01316-CR.

1

CR2: 67).

# ISSUES PRESENTED

## POINT OF ERROR 1

*The presiding judge violated Rule 605 of the Texas Rules of Evidence by testifying as a witness in Appellant's cases.*

## POINT OF ERROR 2

*The trial court abused its discretion by considering evidence outside the record in deciding Appellant's sentences in these causes.*

## POINT OF ERROR 3

*The trial court's abandonment of its role as a neutral arbiter deprived Appellant of his right to due process under the Fourteenth Amendment of the United States Constitution.*

## POINT OF ERROR 4

*The trial court's abandonment of its role as a neutral arbiter deprived Appellant of his right to due course of law under Article I, § 19 of the Texas Constitution.*

## POINT OF ERROR 5

*The trial court arbitrarily refused to consider the full range of punishment in these causes in violation of Appellant's right to due process under the Fourteenth Amendment of the United States Constitution.*

## POINT OF ERROR 6

*The trial court arbitrarily refused to consider the full range of punishment in these causes in violation of Appellant's right to due course of law under Article I, § 19 of the Texas Constitution.*

## POINT OF ERROR 7

*The Court should reform the judgment in Appellate Cause No. 05-14-01316-CR.*

## STATEMENT OF FACTS

Appellant pleaded guilty to his 2013 burglary of a habitation case. (RR2: 7). The State offered, and the court admitted, Appellant's signed, written, voluntary judicial confession and stipulation of evidence. (CR2: 31; RR2: 7; State's Exhibit 1). The court accepted Appellant's plea, found the evidence sufficient to substantiate his guilt, deferred further adjudication, and placed him on community supervision for a period of five years. (CR2: 20-25, 26-29; RR2: 8).

On July 21, 2014, the State filed a motion to adjudicate in Appellant's 2013 burglary case alleging, among other violations, that Appellant committed a new burglary of a habitation offense on June 25, 2014. (CR2: 49-50). A month later, on July 24, 2014, a grand jury returned a true bill indictment for this new burglary offense. (CR1: 7).

On September 15, 2014, the trial court called both burglary cases. (RR3: 4). After the trial court accused Appellant of being a member of Texas Syndicate and expressed her displeasure with Appellant,[2] the judge told Appellant that he should reconsider taking the State's offer of ten years. (RR3: 6). The judge further explained to Appellant that she "might give him more than ten." (RR2: 9). Appellant's attorney requested time to confer with his client about how to proceed

---

[2] POINTS OF ERROR 1 AND 2, RESTATED, *infra*, contain further details regarding the trial court's specific comments.

3

in these cases. (RR3: 9). The hearing concluded at this point. (RR3: 9).

Four days later, on September 19, 2014, Appellant's hearing continued. (RR4: 5). The judge asked Appellant, "And you still want to go open to the Court; is that correct?" (RR4: 5). Appellant answered in the affirmative. (RR4: 6). Appellant entered a plea of guilty to the new case and a plea of true to the allegations in the motion to adjudicate in the 2013 burglary case. (CR1: 21-24; CR2: 58-59; RR4: 7).

The State offered, and the court admitted, Appellant's signed, written, voluntary judicial confession of stipulation of evidence in the new 2014 burglary case. (CR1: 25; RR4: 7-8; State's Ex. 1). The State offered, and the court admitted, Appellant's signed, written, voluntary plea of true in his probation case. (CR2: 59; RR4: 8). The State requested that the court "take judicial notice of the entire contents of the Court's file." (RR4: 8). The State rested without presenting any other testimony or evidence. (RR4: 8).

Appellant testified on his own behalf. (RR4: 8-30). He acknowledged that he "picked up" the new burglary case while he was on probation for burglary. (RR4: 8). He explained that he had a substance abuse problem and was under the influence of drugs and alcohol while committing the new burglary. (RR4: 9). He consumed five Xanax pills, smoked some marijuana, and imbibed alcohol the day of the offense. (RR4: 9, 13-18).

4

Appellant's CATS[3] evaluation reflected that he needed treatment for his substance abuse problem. (RR4: 9-10). The CATS evaluation recommended outpatient treatment, but Appellant testified that he would complete any type of treatment the court ordered. (RR4: 9-10). He explained that his substance abuse problem arose because he was depressed over his mother's cancer diagnosis. (RR4: 11, 16, 23-25, 29). Appellant pleaded with the court to help him with his drug and alcohol addiction. (RR4: 30, 52-54).

Ultimately, the court rejected Appellant's request for treatment and probation. The court sentenced Appellant to 15 years' imprisonment in each case. (CR1: 27-29; CR2: 61-63; RR4: 55-57).

## SUMMARY OF ARGUMENT

**Issue 1:** The trial judge's numerous statements and comments about Appellant's chest tattoo and gang affiliation throughout the hearing were the functional equivalent of witness testimony. Neither the State nor the defense presented any evidence of Appellant's gang membership or affiliation. The trial court violated the unambiguous terms of Rule 605 of the Texas Rules of Evidence by testifying as a witness in Appellant's cases.

---

[3] CATS stands for Comprehensive Assessment and Treatment Services, a provider of substance abuse and mental health services within the Dallas County Community Supervision and Corrections Department. http://www.dallascounty.org/department/csc/cats.php (last visited January 13, 2015).

5

**Issue 2:** In determining Appellant's punishment in these causes, the trial court improperly considered facts not in evidence. Because the State did not present any evidence of Appellant's gang affiliation or activity, the trial court abused its discretion by considering Appellant's purported gang affiliation in determining his punishment.

**Issues 3 and 4:** The trial court failed to remain neutral and detached in these cases. The judge's pervasive involvement in the hearing deprived Appellant of his right to due process. The trial judge made frequent comments reflecting her disdain towards Appellant, actively cross-examined Appellant, personally concluded that Appellant was a gang member despite the fact that the State presented absolutely no evidence of gang affiliation, and employed a bait and switch approach regarding whether Appellant would or should call his mother to testify on his behalf. The judge's comments and conduct throughout the entire proceeding demonstrate her adversarial position against Appellant which rendered her biased against him. In light of the unique circumstances in these cases, the trial judge demonstrated a failure to remain neutral and impartial in Appellant's cases. This Court should reverse and remand for a new punishment hearing in these causes.

**Issues 5 and 6:** The record definitively establishes that the trial court arbitrarily refused to consider any punishment less than ten years, which is

6

significantly higher than the two-year minimum term of imprisonment applicable in these cases. The trial court's comments at the very beginning of the hearing and prior to the presentation of any evidence demonstrate her refusal to consider any term of imprisonment less than ten years in these cases. This failure to consider the full range of punishment violated Appellant's right to due process.

**Issue 7:** The Court should reform the judgment to properly reflect that there was no plea bargain in Appellate Cause No. 05-14-01316-CR.

## ARGUMENT

### POINT OF ERROR 1, RESTATED

***The presiding judge violated Rule 605 of the Texas Rules of Evidence by testifying as a witness in Appellant's cases.***

### POINT OF ERROR 2, RESTATED

***The trial court abused its discretion by considering evidence outside the record in deciding Appellant's sentences in these causes.***

**(Jointly Argued)**

## Facts

At Appellant's initial court setting on September 15, 2014, the judge called both cases and asked Appellant how to pronounce his last name. (RR3: 4). Appellant complied. (RR3: 4). The trial court then immediately engaged Appellant in the following exchange:

> THE COURT: What's that tattoo you have on your chest?

7

THE DEFENDANT:      Texas.

THE COURT:      Oh, man. So you're ready to go down; you're Texas Syndicate, right?

THE DEFENDANT:      No, ma'am.

THE COURT:      You seem to be kind of young to be a member of that. You've been to prison before?

THE DEFENDANT:      No, ma'am.

THE COURT:      You got it for your daddy, Texas Syndicate?

THE DEFENDANT:      No, ma'am.

THE COURT:      Who do you know that's in Texas Syndicate?

THE DEFENDANT:      No one.

THE COURT:      You just love the hell out of Texas, is that it? You just love it so much you're gonna mess up your chest for Texas. Wow. I don't know. No wonder you can't make this probation

        ….

THE COURT:      Let me see your chest. I want to see your tattoo.

THE DEFENDANT:      (Demonstrates.)

THE COURT:      What does that say, "O" what? What are the initials?

THE DEFENDANT:      OCT.

THE COURT:      What?

8

THE DEFENDANT:     OCT.

THE COURT:     OCT?

THE DEFENDANT:     Yes, ma'am.

THE COURT:     What does that mean?

THE DEFENDANT:     Oak Cliff, Texas.

THE COURT:     No. Yeah. What did they offer you?

THE DEFENDANT:     Ten years.

THE COURT:     Yeah. I don't know. Maybe you should consider taking that.

MR. WARD [defense counsel]: We did a CATS eval, Judge. The CATS eval said –

THE COURT:     When did you get that tat?

THE DEFENDANT:     When I was 15.

THE COURT:     Why?

THE DEFENDANT:     I was just – in my mind, at the time, I thought it would be a good idea because I've been in Dallas my whole life, in Oak Cliff. I've never moved houses.

THE COURT:     Do you have a mommy?

THE DEFENDANT:     Yes, ma'am.

THE COURT:     How old is she?

THE DEFENDANT:     50.

THE COURT:     Do I look like her? I'm her same age.

9

Do I remind you of your mommy?

THE DEFENDANT: No, ma'am.

THE COURT: No, because I'm not buying that story, not one bit. You were just so proud.

(RR3: 4-7). The hearing ended without any disposition when the court permitted defense counsel an opportunity to discuss with his client how Appellant wished to proceed in the case. (RR3: 9).

When the hearing continued on September 19, 2014, the court admitted Appellant's written and voluntary judicial confession and plea of true. (CR1: 25; CR2: 59; RR4: 7-8; State's Ex. 1). The State then rested without presenting any witnesses or other evidence. (RR4: 8).

Appellant testified that he had a drug and alcohol problem and wanted treatment to address his addiction. (RR4: 9-10). The CATS evaluation recommended that Appellant receive outpatient treatment, but Appellant testified that he would be willing to go to inpatient treatment if the court determined that inpatient was a more appropriate course of action. (RR4: 9-10). Appellant requested that he be continued on probation. (RR4: 10).

The State cross-examined Appellant as to the specific details of the June 25, 2014, burglary, with special attention to his drug use that day. (RR4: 13-20, 24). The State also focused on Appellant's failure to comply with his probation conditions. (RR4: 15-16, 25-26). On re-direct, Appellant testified that he wanted

help with his drug addiction. (RR4: 28-30).

The judge then engaged in extensive questioning of Appellant. (RR4: 30-45). During the course of her questioning, the judge and Appellant had the following exchange:

> THE COURT: Okay. And then what about this weapon?[4] Is that about the time that you got that tattoo on your chest, that gang tattoo, OTC; is that right?
>
> THE DEFENDANT: OCT, yes, ma'am.
>
> THE COURT: OCT. Excuse me. So around the same time that you were burglarizing these homes, that was about when you were with this gang; is that right?
>
> THE DEFENDANT: I wasn't with a gang, ma'am. I just had money and – and since I had – that's how I decided to use it. Another dumb decision.
>
> THE COURT: Okay. All righty. So you tattoo on your chest Texas – and what else does it say?
>
> THE DEFENDANT: OCT. That's it.
>
> THE COURT: I can't remember. Can I take a look at it again? Let me see what it says.
>
> THE DEFENDANT: (Demonstrates.)
>
> THE COURT: Yeah. Okay. All righty. Okay.

(RR4: 35-36).

---

[4] Although not entirely clear at this juncture of the proceeding, it appears the weapon related to a prior offense. (RR3: 9; RR4: 35).

11

After additional extensive questioning from the judge, defense counsel and the State made closing arguments. (RR4: 36-52, 52-55). The focus of defense counsel's argument was on intervention for drug treatment. (RR4: 52-54). The State argued that Appellant's problem was not related to substance abuse but to bad decisions and judgment. (RR4: 54-55).

At the conclusion of these arguments, the court sentenced Appellant. (RR4: 55-58). During sentencing he judge made the following comments:

> … I thought maybe after you got a little taste of what I was talking about that you would then listen to your lawyer's advice, that maybe at least you'd start saying the right things. But you just can't help yourself; you just can't help it. And maybe your mother will be glad that now – that she'll know where you are all the time and she won't be worried about you out and about, ***hanging out with gangsters*** or whoever you hang out with, breaking into people's homes, risking getting killed. Well, I guess you could get killed in prison, but you already knew that, right?

(RR4: 57-58) (emphasis added).

## Analysis

### I. The judge testified in violation of Rule 605.

#### A. Applicable Law

Rule 605 provides that "[t]he judge presiding at the trial may not testify in that trial as a witness. No objection need be made in order to preserve the point." TEX. R. EVID. 605. The language of this rule is unambiguous in its prohibition.

*Hensarling v. State*, 829 S.W.2d 168, 170 (Tex. Crim. App. 1992). Its purpose is to preserve the judge's impartiality. *Id*.; *see also O'Quinn v. Hall*, 77 S.W.3d 438, 448 (Tex. App.—Corpus Christi 2002, no pet.).

In reviewing whether the trial court violated Rule 605, the question is whether the judge's statements of fact are essential to its judicial function or are the functional equivalent of witness testimony. *Hammond v. State*, 799 S.W.2d 741, 746 (Tex. Crim. App. 1990); *see also Lawrence v. State*, No. 05-10-00083-CR, 2011 Tex. App. LEXIS 2971, *8 (Tex. App.—Dallas Apr. 20, 2011, pet. ref'd) (mem. op., not designated for publication). Statements related to the court's judicial function do not violate Rule 605. *See, e.g.*, *Hammond*, 799 S.W.2d at 946-47 (holding that the judge's instruction to the court clerk to inform the jurors that the defendant had escaped after the jury rendered a guilty verdict did not constitute testimony as to the issue of the defendant's future dangerousness; rather, because the judge's statements related to the jurors' safety and were in furtherance of his essential judicial function, the statements were not testimony); *Lawrence*, 2011 Tex. App. LEXIS 2971 at *8-9 (finding that the trial judge's statements were not testimony because he merely recounted the facts he heard on the record without injecting any new facts into the proceeding). Judicial rulings and explanations of judicial rulings do not constitute testimony. *Lawrence*, 2011 Tex. App. LEXIS 2971 at *10.

13

On the other hand, statements of fact that are the equivalent of witness testimony violate Rule 605. *See O'Quinn*, 77 S.W.3d at 447-48 ("The trial court's determination of the date of notice was based on facts provided to the court by its staff, facts that the court provided at the hearing. This created the appearance of bias which Rule 605 seeks to prevent."). Statements that inject new facts outside the record constitute judicial testimony. *Cf. Lawrence*, 2011 Tex. App. LEXIS 2971 at *9 (noting that the judge's comments did not violate Rule 605 because the comments did not inject new facts into the proceeding).

## B. Application of Law to the Facts

The judge's multiple conclusory statements that Appellant was a member of the gang Texas Syndicate injected new facts outside the record of these cases. The State presented no evidence that Appellant was in any gang. Appellant did not raise any issue related to gang membership. When the judge repeatedly questioned Appellant about the tattoo on his chest, Appellant consistently maintained that he was not a gang member. (RR3: 4-7; RR4: 35-36). The record contains no other evidence to refute Appellant's statement that he was not a gang member.

The judge's numerous comments and conclusions about Appellant's purported gang affiliation cannot be construed as a judicial ruling or part of the court's judicial function. Rather, the judge's statements of fact were the functional equivalent of witness testimony. The only statements in the record regarding

14

Appellant's gang affiliation, if any, came from the judge herself. Therefore, the judge's comments violated Rule 605's absolute prohibition against judicial testimony.

## II. The trial court abused its discretion by considering Appellant's purported gang affiliation in determining Appellant's sentences.

### A. Applicable Law

During the punishment phase of trial, evidence as to any matter may be offered if the trial court deems it relevant to sentencing. TEX. CODE CRIM. PROC. art. 37.07, § 3(a). Appellant recognizes the trial court's broad discretion to admit evidence the court deems relevant to sentencing, including evidence of the defendant's reputation and character. *Id.*; *Hayden v. State*, 296 S.W.3d 549, 552 (Tex. Crim. App. 2009). A trial court abuses its discretion when it bases a ruling on facts outside the record. *O'Quinn*, 77 S.W.3d at 446; *see also In re Salgado*, 53 S.W.3d 752, 758 (Tex. App.—El Paso 2001, orig. proceeding) (noting that a trial court abuses its discretion when its ruling is based on factual assertions not supported by the record).

Evidence of gang membership is relevant and admissible if the factfinder is (1) provided evidence of the defendant's gang membership; (2) provided evidence of the gang's character and reputation; (3) not required to determine if the defendant committed bad acts or misconduct; and (4) only asked to consider the reputation or character of the defendant. *Beasley v. State*, 902 S.W.2d 452, 456

15

(Tex. Crim. App. 1995); *see also Jackson v. State*, Nos. 05-13-00579-CR and 05-13-00580-CR, 2014 Tex. App. LEXIS 9059, at *8-9 (Tex. App.—Dallas Aug. 14, 2014, no pet.) (mem. op., not designated for publication) (applying the *Beasley* test to gang evidence offered during the punishment stage). Once the State establishes gang membership, it must then present evidence of the activities of that particular gang generally so that the factfinder can determine whether the defendant's membership in that particular gang is a positive or negative aspect of his character. *Beasley*, 902 S.W.2d at 456; *Hickman v. State*, Nos. 05-10-01250-CR and 05-10-01251-CR, 2013 Tex. App. LEXIS 9323, at *6 (Tex. App.—Dallas July 29, 2013, no pet.) (mem. op., not designated for publication).

## B. Application of Law to the Facts

Appellant recognizes that gang evidence may be relevant character or reputation evidence. However, it is axiomatic that the State introduce such evidence against the defendant during the hearing. In Appellant's cases, the State presented no evidence of Appellant's affiliation with a gang, if any. Appellant did not offer any testimony that would have opened the door to this gang evidence. The trial judge introduced the gang evidence on her own accord.

Even if this Court were to consider the judge's conclusory statements regarding Appellant's gang affiliation as evidence, the statements still fail the *Beasley* test for admissibility. The judge did not have any actual evidence of

16

Appellant's gang membership.[5] Indeed, the judge seemed unfamiliar with "OCT" and offered no connection between "OCT" and Texas Syndicate, if there is any.[6] Nor did the judge state any facts or information supporting her conclusion that Appellant's Texas tattoo with "OCT" is a tattoo associated with Texas Syndicate.[7] Furthermore, she did not present any evidence of the activities of Texas Syndicate so that she could determine whether Appellant's alleged membership in that gang was a positive or negative aspect of his character. The judge's own personal conclusion that Appellant belonged to Texas Syndicate based on her viewing of Appellant's chest tattoo was not sufficient evidence to satisfy the *Beasley* test. Therefore, the gang evidence in appellant's cases was not relevant or admissible punishment evidence in Appellant's cases, and the trial court abused its discretion in considering Appellant's unsubstantiated gang affiliation in deciding his

[5] Typically, the State presents gang evidence through expert testimony. *See, e.g.*, *Harris v. State*, No. AP-76,810, 2014 Tex. Crim. App. Unpub. LEXIS 517, at *57-63 (Tex. Crim. App. 2014) (not designated for publication) (finding that the trial court did not abuse its discretion in admitting expert testimony on the defendant's gang tattoos); *Jackson*, 2014 Tex. App. LEXIS 9059, at *9-10 (finding that the Dallas police detective's testimony as an expert on gangs and gang tattoos sufficiently satisfied the *Beasley* test); *Jackson v. State*, 314 S.W.3d 118, 128 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (noting that evidence of a gang's character and reputation generally is usually offered through expert testimony of a law enforcement officer familiar with that gang).

[6] Texas Syndicate is a prison gang. *See, e.g.*, *Martinez v. State*, 327 S.W.3d 727, 731 (Tex. Crim. App. 2010); *Urbano v. State*, 837 S.W.2d 114, 116 (Tex. Crim. App. 1992); *Gonzales v. State*, No. 05-02-00478-CR, 2003 Tex. App. LEXIS 6740, at *15 (Tex. App.—Dallas Aug. 6, 2003, pet. ref'd) (not designated for publication); *see also* http://www.prisonoffenders.com/texas_syndicate.html (last visited January 21, 2015). Appellant testified that he had never been to prison. (RR3: 4).

17

sentences.

**POINT OF ERROR 3, RESTATED**

***The trial court's abandonment of its role as a neutral arbiter deprived Appellant of his right to due process under the Fourteenth Amendment of the United States Constitution.***

**POINT OF ERROR 4, RESTATED**

***The trial court's abandonment of its role as a neutral arbiter deprived Appellant of his right to due course of law under Article I, § 19 of the Texas Constitution.***

**(Jointly Argued)**

## Applicable Law

A defendant has a due process right to a fair trial in a fair tribunal. *In re Murchison*, 349 U.S. 133, 136 (1955); U.S. CONST. amend. XIV; *see also* TEX. CONST. art. I, § 19 (providing for due course of law). Due process requires that a criminal trial be held before a neutral and detached judge with no actual bias against the defendant. *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973); *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006). This same due process right to a trial before a neutral and detached hearing body applies to open plea hearings and probation revocation hearings. *See, e.g.*, *Grado v. State*, 445 S.W.3d 736, 739 (Tex. Crim. App. 2014) (recognizing that due process requires a revocation hearing before a neutral and detached judge); *Peterson v. State*, No. 05-12-01417-CR, 2013 Tex. App. LEXIS 13282, at *1-11 (Tex. App.—Dallas Oct. 24, 2013, no pet.) (mem. op., not designated for publication) (evaluating whether the trial court's

18

comments made during the defendant's open plea hearing violated his right to due process); *Allen v. State*, No. 05-12-00672-CR, 2013 Tex. App. LEXIS 4701, at *1-5 (Tex. App.—Dallas Apr. 11, 2013, no pet.) (mem. op., not designated for publication) (evaluating whether the trial court's cross-examination of the defendant's testimony during his open plea hearing violated his right to due process); *Guin v. State*, 209 S.W.3d 682, 687 (Tex. App.—Texarkana 2006, no pet.) (noting that due process requires the trial court to maintain its neutral and detached role when determining whether the defendant should be placed on community supervision).

Appellant recognizes that the trial court has broad discretion over the conduct of court proceedings. *See State ex rel. Rosenthal v. Poe*, 98 S.W.3d 194, 199 (Tex. Crim. App. 2003); *Wilson v. State*, Nos. 05-10-01362-CR, 05-10-01363-CR, and 05-10-01364-CR, 2011 Tex. App. LEXIS 9702, at *5 (Tex. App.—Dallas Dec. 12, 2011) (mem. op., not designated for publication); *Guerrero v. State*, 143 S.W.3d 283, 284 (Tex. App.—Waco 2004, no pet.). However, this discretion is not unfettered, and the judge must maintain a neutral and detached role so as not to violate a defendant's constitutional right to an impartial judge. *Wilson*, 2011 Tex. App. LEXIS 9702, at *5; *Bethany v. State*, 814 S.W.2d 455, 462 (Tex. App.—Houston [14th Dist.] 1991, no pet.).

A judge should not act as an advocate or adversary for any party. *Brown v.*

*State*, 122 S.W.3d 794, 797 (Tex. Crim. App. 2003); *Dockstader v. State*, 233 S.W.3d 98, 108 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd); *Taylor v. State*, Nos. 05-13-01369-CR and 05-13-01370-CR, 2014 Tex. App. LEXIS 13918, at *7-9 (Tex. App.—Dallas Dec. 30, 2014, no pet. h.) (mem. op., not designated for publication). To reverse a judgment based on a judge's improper conduct or comments during a proceeding, an appellate court must find (1) that the judicial impropriety was in fact committed, and (2) probable prejudice to the complaining party. *Dockstader*, 233 S.W.3d at 108.

## Preservation

Appellant anticipates that the State may argue that Appellant did not preserve these issues for appellate review because he did not object to the trial court's comments and questions. Appellant recognizes that when no objection is made to the remarks and conduct of the trial court may not be challenged on appeal unless they are fundamentally erroneous. *See Brewer v. State*, 572 S.W.2d 719, 721 (Tex. Crim. App. [Panel Op.] 1978); *Peterson*, 2013 Tex. App. LEXIS 13282, at *6-7; *Wilson*, 2011 Tex. App. LEXIS 9702, at *4-5.

The pervasive and harmful nature of the trial court's comments and active involvement in Appellant's cases constitutes fundamental error and, therefore, an objection was not required to preserve error. *See Jasper v. State*, 61 S.W.3d 413, 420 (Tex. Crim. App. 2001) (noting that an objection is not required to preserve

20

fundamental error); *Moreno v. State*, 900 S.W.2d 357, 359 (Tex. App.—Texarkana 1995, no pet.) (noting that harm that was so egregious that the defendant was denied a fair and impartial trial constitutes fundamental error and does not require preservation). Under the unique circumstances and facts of the instant cases, no objection was required. This Court should address Appellant's arguments on the merits.

## Analysis

Throughout the hearing in Appellant's cases, the trial judge was an active participant to a degree that exceeded the permissible scope of her role in determining Appellant's sentences. The judge's conduct breached the bounds of a neutral and detached arbiter of justice.

### A. The trial judge's comments throughout the entire hearing reflect a failure to remain neutral and detached.

The judge made numerous comments throughout the hearing and prior to closing argument by either party. The following comments, though not an exhaustive list, illustrate the types and tenor of the comments the judge made throughout the entire proceeding.

#### 1. Prior to accepting Appellant's pleas.

- "Well, the good part is that they didn't blow your head off. Well, I don't know. There are some things worse than death. Going to a Texas prison for ten years, yeah, I think I'd rather be dead than do that." (RR3: 7-8).

21

- "Well, I don't know. Wow. Oh, my God, and your mother has cancer, and here you are making things worse for her. That's gonna make me so mad. If I hear about that, I'm going to be so pissed. Oh, my God. She's dying of cancer, and he's getting high and breaking into people's homes." (RR3: 8).

- The judge asked Appellant who was taking care of his mother, and he responded, "She's out there alone." (RR3: 8). The judge then asked Appellant what his mother had done to make him treat her that way. (RR3: 8). Appellant answered that she had not abused him and was not mean to him. (RR3: 8-9). The judge then stated, "Yeah. Wow. Wow. Wow. Wow. How are we going to clear that up? I don't know. I don't know. I'm thinking ten might be good for you than going open to me." (RR3: 9).

## 2. *During Appellant's testimony.*

- In response to Appellant's testimony that his girlfriend begged him not to leave the house on the night of the new burglary offense and that his mother did not know he was leaving the house, the judge said, "Wow. She was crying begging you to stay?" and "Wow. That's cold."[8] (RR4: 20-21).

- When the State concluded its cross-examination of Appellant and passed the witness, the judge said, "Wow. That's incredible, how you see yourself." (RR4: 28).

## 3. *After both the defense and the State concluded direct and cross-examination of Appellant.*

- "Okay. Well, this is what I'm thinking, Mr. Gayton. You're very, very scary, because you have a mother with cancer who's dying, who you've been disappointing your whole life by violating the law, okay. She had cancer when you started getting wasted, if what you're telling me is true. You had a girlfriend that was there that you traumatized, that she was crying – I don't know why." (RR4: 42-43).

---

[8] Appellant lived with his mother, and his girlfriend stayed with him at the time of the 2014 burglary case. (RR4: 20, 37-38).

22

### 4. *After closing arguments.*

- "Mr. Gayton, I know that you probably, seriously, feel like you've been victimized your whole life, that you've been a victim of your – of your circumstances. You feel like you were justified in burglarizing because your daddy left you; you didn't want your mother supporting you. Yeah, maybe you do feel depressed about that stuff, but, you know, it's not the way to be." (RR4: 55).

- "You know, it was horrible that you – you've been self-centered your whole life, always wanting to do just whatever you want to do, having a total disregard for your family, continuingly upsetting your family by getting arrested by going out and burglarizing homes. You stand there and really think that you're gonna be able to convince me – even after your lawyer told you that I thought you needed to take the ten, you stand there, thinking that you know better than your lawyer and that you know better than everyone else in the world what – what needs to happen. One burglary? Sure, let's give you probation. Two burglaries as a kid? Yeah, let's send you to Medlock, try and get you straight. Your first burglary of a habitation, that's really nice of the DAs to give you a shot at it, probation. But you drinking, smoking, taking Xanax while you're on felony probation, looking at 20 years in prison, and then not caring about your mother's health one bit, going out and burglarizing and, furthermore, not caring that she's having to go through radiation treatments and chemo, that's not important. What's important is for her to get her butt down here to try and save your butt. That is some of the most self-centered, most selfish thinking that I have ever heard." (RR4: 55-56).

These remarks are a clear indication that the judge was biased against Appellant even before taking Appellant's pleas in these cases. While Appellant recognizes that disapproving or critical remarks in and of themselves generally do not support a finding of bias or partiality, the judge's numerous comments throughout Appellant's hearing clearly reflect disdain towards Appellant. These remarks established a biased tone against Appellant throughout the entire

23

proceeding. The judge's numerous comments reveal such a high degree of antagonism against Appellant so as to render her ability to make fair judgment impossible. *Charboneau v. State*, No. 05-13-00340-CR, 2014 Tex. App. LEXIS 13923, at *7-8 (Tex. App.—Dallas Dec. 30, 2014, no pet. h.) (mem. op., not designated for publication); *Dockstader*, 233 S.W 3d at 108.

**B. The trial judge's active participation in cross-examining Appellant reflects a failure to remain neutral and detached.**

The trial judge actively engaged in cross-examination of Appellant throughout the hearing. Appellant recognizes that a judge may question a testifying witness to clarify a particular point or to have the witness repeat something the judge could not hear. *Wilson*, 2011 Tex. App. LEXIS 9702, at *5; *Moreno*, 900 S.W.2d at 359. However, when a judge exceeds this permissible scope of questioning, two dangers arise: (1) the judge may convey his opinion of the case and ultimately influence the jury's decision, or (2) the judge may become an advocate in the adversarial process and lose the neutral and detached role required for the fact finder and the judge. *Moreno*, 900 S.W.2d at 359.

The trial court must maintain its neutral and detached role when asking questions of a testifying witness. *Guin*, 209 S.W.3d at 687. A judge may not assume the role of a prosecutor and become an advocate for the State. *Brown*, 122 S.W.3d at 797; *Dockstader*, 233 S.W.3d at 108; *Wilson*, 2011 Tex. App. LEXIS 9702, at *7; *Avilez v. State*, 333 S.W.3d 661, 673 (Tex. App.—Houston [1st Dist.]

24

2010, pet. ref'd).

The judge's cross-examination of Appellant was much more extensive than the prosecutor's cross-examination. (RR4: 30-45). By engaging in this extensive cross-examination of Appellant, the judge usurped the State and assumed the role of prosecutor and investigator. The judge's cross-examination of Appellant in an effort to solicit specific facts and details not raised by either the State or the defense exceeded the permissible bounds of the kinds of questions a judge may ask a witness. The judge's active participation in the hearing eclipsed her obligation to remain neutral and detached.

## C. The trial judge's consideration of Appellant's purported gang membership which was wholly unsupported by any evidence reflects a failure to remain neutral and detached.

The judge also demonstrated her biased stance against Appellant when she began the hearing by personally investigating Appellant's chest tattoo. (RR3: 4-7). Not only did she ask detailed questions about his tattoo and request to see his chest tattoo on two occasions, she also formed her own opinion that this tattoo meant Appellant was in a gang despite his consistent denial. *See* POINTS OF ERROR 1 AND 2, RESTATED *supra*; (RR3: 4-7; RR4: 35-36). The State did not present any evidence to rebut Appellant's claim that he was not in a gang. The judge's specific comment during sentencing that Appellant's mother would now not have to worry about Appellant "hanging out with all these gangsters" shows that the judge's

25

personal conclusion that Appellant was in a gang influenced her sentencing decision. (RR4: 5). Consequently, the judge demonstrated a complete failure to remain neutral and detached by considering these extrajudicial matters in deciding Appellant's sentences. *See Taylor*, 2014 Tex. App. LEXIS 13918, at *7-9 (reversing and remanding the cases because the record demonstrated that the trial judge's opinion based on extrajudicial information influenced her sentencing decision and she did not exhibit the actions of an unbiased judicial officer).

**D. The trial judge's bait and switch approach towards Appellant's desire to call his mother to testify as a witness on his behalf reflects a failure to remain neutral and detached.**

During the course of the trial judge's extensive cross-examination of Appellant, she engaged Appellant in the following exchange:

THE COURT: …. How many times have you been under rules of a judge? And you've never been able to comply with probation, right? You've never been able to make it?

THE DEFENDANT: Yes, ma'am.

THE COURT: You don't have your mom here. You don't have your girlfriend here. Nobody here to back up what you're saying.

THE DEFENDANT: I didn't know when my court date was.

THE COURT: I'll gladly give you a continuance. Mr. Ward, you want a continuance to bring all these witnesses down?

26

MR. WARD: Your Honor, well, if he – if that's what he wants, that's fine.

THE COURT: Or I can just call your mom right now.

MR. WARD: Your Honor, we had – and just for the record, we had – we had reset this case the last time, and I recall being back there, giving him the Court date so as to allow him time to contact his mother, let her know what's going on.

THE COURT: How much time do you need, sir? I'd love to hear from your mom and your girlfriend.

THE DEFENDANT: They should come, maybe – I'm pretty sure tomorrow, unless something happens. But she –

THE COURT: Oh, so you've been talking to her?

THE DEFENDANT: Yes, ma'am, she –

THE COURT: Did you tell her about this court date?

THE DEFENDANT: No, ma'am. I didn't know that this was gonna be the exact date that I was gonna come to court. I just knew this week I was coming back.

THE COURT: But you didn't call to ask her to come down?

THE DEFENDANT: I didn't have – I didn't know –

THE COURT: And she's able to walk around and everything, right?

THE DEFENDANT: Yes, ma'am, when she's not in pain. She has certain times throughout the day when she tells me that –

27

THE COURT: And your – she's been visiting you in the jail?

THE DEFENDANT: Yes, ma'am.

THE COURT: And your girlfriend has been visiting you?

THE DEFENDANT: Yes, ma'am, they come together.

THE COURT: Your siblings?

THE DEFENDANT: They came once.

THE COURT: What do y'all talk about? Does your mom cry?

THE DEFENDANT: Yes, ma'am.

THE COURT: Does your girlfriend cry?

THE DEFENDANT: Yes, ma'am.

THE COURT: Does your girlfriend say, look, I told you not to go out; I told you not to be drinking?

THE DEFENDANT: Yes, ma'am.

THE COURT: I bet your mom is tired of crying for you. What else do you think your mother's gonna tell me, other than cry for – beg for mercy, maybe, for you?

THE DEFENDANT: I don't know, ma'am.

THE COURT: You don't know what she's gonna say?

THE DEFENDANT: No, ma'am.

28

THE COURT: Do you know what your girlfriend's gonna say –

THE DEFENDANT: No, ma'am.

THE COURT: -- other than just cry for you again?

THE DEFENDANT: No, ma'am.

THE COURT: Okay. So you want a continuance?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right. Well, we're gonna do that. I'm accepting your pleas. I'm finding that you're mentally competent to enter your pleas. I'm finding that your pleas are being made freely and voluntarily. Based on your pleas and on the evidence presented in each of these cases, there is enough for the Court to find you guilty as charged in the 14 – 2014 case, and I'm finding all the allegations – in the motion to proceed, I'm finding all of them true. I'm taking no further action. I am passing your case to give you and your attorney the – attorney the opportunity to present more evidence that might be helpful. Mr. Ward, I mean, he doesn't know what his witnesses are going to say. Do you want a continuance?

MR. WARD: Your Honor, if you would like – you would like them to come, I will do another continuance to allow more time for them to come to the next date that he will be informed of as well.

THE COURT: Did your lawyer give you a copy of the pass slip, sir, last time?

THE DEFENDANT: No, ma'am.

THE COURT: No? And you don't remember him telling you anything about your court date?

29

THE DEFENDANT: I mean, he told me I was going to come back this week, in a couple of days, but I didn't know the exact date.

THE COURT: And you didn't talk about it with your mom? You've never talked with your mom or your girlfriend about coming down to testify for you? Never?

THE DEFENDANT: No, ma'am. I didn't have money on the phone to call them to let them know to notify them.

THE COURT: There's always a reason for you not to do the right thing. All righty, if you want to put them through that. Yeah, you want me to call them to see if they'll come down?

THE DEFENDANT: Yes, ma'am.

THE COURT: Yeah. Let me call right now. Ruth Skinner, is that your mom's name?

THE DEFENDANT: Yes, ma'am.

THE COURT: Let me make sure. How come you got two phone numbers for your mom?

THE DEFENDANT: I don't recall putting two numbers down.

THE COURT: What?

THE DEFENDANT: The house number is 337-1948.

THE COURT: Oh, I don't have either of those. What's your mother's number?

THE DEFENDANT: 214-337-1948.

30

THE COURT:     Don't you have to call collect to talk to your mother? They don't do that anymore?

THE DEFENDANT:     I used those 60 seconds already. I can't call anymore.

(The Court places telephone call.)

THE COURT:     Well, she had radiation this morning, and she's going to have radiation on Monday. She'd be glad to come down and testify for you, but I think she's gonna have chemo on the 25th, so she might still be a little under the weather. You still want her to come?

THE DEFENDANT:     No, ma'am.

THE COURT:     All righty. Mr. Ward, do you want – either argue for a motion for continuance or argue for what I'm going to do as far as punishment?

MR. WARD:     Well, may I speak with my client first?

THE COURT:     Go ahead. Go talk to your lawyer in private.

(RR4: 45-50). The judge took a brief recess. (RR4: 50).

The judge then engaged in the following exchange with Appellant and defense counsel:

THE COURT:     Back on the record. Mr. Ward, do you want to proceed, or do you want to ask for a continuance?

MR. WARD:     Judge, I would ask the Court for a continuance so as to allow his mother a chance to come here and –

31

THE COURT:        All righty, then.

MR. WARD:        That's after consulting with my client, Your Honor.

THE COURT:        Well, okay. Well, then, just get with the DA and find out when a good day is for this woman to come down. She's probably gonna have to check with her 30-year-old daughter that's been taking care of her, to see if she can bring her down. I don't know how soon she'll be able to get up and come to the courthouse after radiation and after chemo or whether she'll have to consult with her doctor to see if this is even a healthy environment for her to be around, seeing that she's going to be in such a delicate position. But we'll go ahead and grant you a continuance.

THE DEFENDANT:        Thank you, Your Honor.

THE COURT:        *Oh, you should not be thanking me. If you think that you're impressing me by dragging your dying mother down here to testify for you, you're doing just the opposite, sir.* Go with the sheriff.

        ….

THE COURT:        Back on the record.

        ….

THE COURT:        Just so the record is clear, now you've changed your mind? Now you want to go ahead and do it today?

THE DEFENDANT:        Yes, ma'am.

THE COURT:        Because you don't want me to ding you for dragging your poor mother down here to try and get you out of your mess yet a tenth time; is that right?

32

THE DEFENDANT: Yes, ma'am.

THE COURT: All righty. Mr. Ward.

(RR4: 50-52) (emphasis added).

As evident from the trial court's extensive discussion with Appellant and his attorney about calling Appellant's mother to testify on his behalf, the trial court baited Appellant into requesting a continuance so that his mother could testify on his behalf. It is obvious from the judge's comments that she held it against Appellant for not having any witnesses to testify on his behalf to support him. Based on this information, the judge concluded that Appellant would not be successful on probation. It was reasonable for Appellant to infer from the judge's comments that the trial court would not consider probation because he had no support system in his life.

The judge then held it against Appellant when he requested the continuance so his mother could testify for him. The judge chastised him for wanting to bring his dying mother to testify on his behalf even though he was simply trying to comply with the judge's strong suggestion that his mother testify on his behalf.

The record demonstrates that the judge placed Appellant in a no-win situation: the judge unequivocally suggested that Appellant's decision not to call his mother to testify on his behalf represented his lack of support at home, then made clear that Appellant's decision to call his mother represented his utter lack of

33

good judgment because his mother was sick with cancer. This conduct does not reflect the actions of an unbiased judicial officer.

**E. Conclusion**.

Under the unique circumstances of these cases, the judge improperly injected herself into the proceedings to a degree that prevented her from remaining neutral and detached in these cases. The judge's adversarial stance and active involvement in Appellant's hearing was prejudicial to Appellant because the judge did not consider the actual evidence presented by the State and the defense. Consequently, Appellant was deprived of his right to a fair and impartial sentencing hearing. This Court should reverse and remand these causes for a new punishment hearing.

**POINT OF ERROR 5, RESTATED**

*The trial court arbitrarily refused to consider the full range of punishment in these causes in violation of Appellant's right to due process.*

**POINT OF ERROR 6, RESTATED**

*The trial court arbitrarily refused to consider the full range of punishment in these causes in violation of Appellant's right to due course of law.*

**(Jointly Argued)**

<u>Facts</u>

After calling both cases, but before Appellant entered his pleas and before presentation of any evidence or testimony, the trial court asked defense counsel,

34

"What happened? Why are we here? What are we doing?" (RR3: 5). Appellant's attorney responded, "We're going open before the Court, asking that the Court allow him to – my client to stay on probation." (RR3: 4).

A few moments later in the proceeding, and after additional discussion of Appellant's chest tattoo, the judge asked Appellant, "What did [the State] offer you?" (RR3: 5-6). Appellant responded that the State's offer was ten years. (RR3: 6). The judge responded, "Yeah. I don't know. Maybe you should consider taking that." (RR3: 6). At this point, Appellant's attorney attempted to inform the court about the findings in the CATS evaluation, but the court interrupted and started asking more questions about Appellant's chest tattoo. (RR3: 6-7).

After further discussion of matters not relevant to this point of error (*see* POINTS OF ERROR 4 AND 5, Restated *supra*), the judge said, "Yeah. Wow. Wow. Wow. Wow. How are we going to clear that up? I don't know. I don't know. I don't know. I'm thinking ten might be good for you than going open to me. Hold on. Let me see. Juvenile, two counts – oh, no, you were burglarizing as a juvenile?" (RR3: 9). Appellant admitted he had juvenile cases. (RR3: 9). The judge then said, "Seriously, I might give him more than ten. Do you want to keep going open? He's just a thug. Don't gave a shit about anything. Doesn't give a shit about his mommy. Guns, breaking, same day – same thing different year, no." (RR3: 9). The court permitted defense counsel an opportunity to discuss with Appellant his

course of action. (RR3: 9). At the end of the hearing four days after this initial exchange, the court sentenced Appellant to fifteen years in each case. (RR4: 55-57).

## Applicable Law

The federal and state constitutions guarantee the right to a fair trial.[9] U.S. CONST. amend. XIV; TEX. CONST. art. I, §19. Due process requires that a judge remain neutral and detached when assessing punishment. *Gagnon*, 411 U.S. at 786; *Brumit*, 206 S.W.3d at 645. A trial court's arbitrary refusal to consider the entire punishment range applicable to the case or to consider the evidence and impose a predetermined sentence constitutes a denial of due process. *Grado*, 445 S.W.3d at 739; *Jefferson v. State*, 803 S.W.2d 470, 471 (Tex. App.—Dallas 1991, no pet.).

## Analysis

The record affirmatively shows that the trial judge arbitrarily failed to consider the full range of punishment in Appellant's cases. The minimum term of imprisonment in these second degree felonies is two years. TEX. PENAL CODE § 12.33 (providing that the punishment range for a second degree felony is two to twenty years' imprisonment); § 30.02(c)(2) (providing that burglary of a habitation

---

[9] Appellant does not argue that his rights under the Texas Constitution are greater than his rights under the federal constitution. *Earley v. State*, 855 S.W.2d 260, 262 (Tex. App.—Corpus Christi 1993, pet. dism'd as improvidently granted) (noting that "[d]ue process of law requires a neutral and detached hearing body or officer. The Texas Constitution requires no less.") (citations omitted).

is a second degree felony). Without hearing any testimony whatsoever, the trial judge arbitrarily established her baseline minimum sentence at ten years by telling Appellant he should take the State's ten-year offer. Ten years far exceeds the minimum two-year term of imprisonment applicable in these cases. The trial court's failure to consider the entire punishment range of two to twenty years violated Appellant's right to due process and right to due course of law. This Court should reverse and remand for a new punishment hearing in both causes. *Ex parte Brown*, 158 S.W.3d 449, 456-57 (Tex. Crim. App. 2005) (finding that the trial judge arbitrarily failed to consider the entire punishment range and remanding the case to the trial court for a new sentencing hearing).

## POINT OF ERROR 7, RESTATED

### *The Court should reform the judgment in Appellate Cause No. 05-14-01316-CR.*

This Court should exercise its authority to correct the judgment in Appellate Cause No. 05-14-01316-CR. This Court has the authority to amend the judgment to "speak the truth" when it has the necessary data and information to do so. TEX. R. APP. P. 43.2(b); *Bigley v. State,* 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993); *Asberry v. State,* 813 S.W.2d 526, 529-30 (Tex. App.—Dallas 1991, pet. ref'd). The record provides the necessary information and data for this Court to correct the inaccuracy in the judgment in Appellate Cause No. 05-14-01316-CR.

The judgment in Appellate Cause No. 05-14-01316-CR reflects the

37

following: "Terms of Plea Bargain: 15 years TDC." (CR2: 61-63). However, the record clearly reflects that the trial court did not sentence Appellant pursuant to a plea bargain agreement with the State. Appellant entered an open plea of true to the State's motion to adjudicate and requested that the judge continue his deferred adjudication probation. (CR2: 58-59; RR3: 5; RR4: 5-6). The trial court's certification of Appellant's right to appeal also reflects that this case was not a plea bargain case. (CR2: 60). Because the record unequivocally establishes that the trial court sentenced Appellant pursuant to an open plea rather than a plea bargain agreement with the State, this Court should reform the judgment in Appellate Cause No. 05-14-01316-CR.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Appellant prays that this Court reverse and remand both causes for a new punishment hearing. In the alternative, Appellant prays that this Court reform the judgment in Appellate Cause No. 05-14-01316-CR.

                                           Respectfully submitted,


                                           /s/ Julie Woods
Lynn Richardson                            Julie Woods
Chief Public Defender                      Assistant Public Defender
Dallas County, Texas                       State Bar No. 24046173
                                           Frank Crowley Courts Building
                                           133 N. Riverfront Blvd., LB-2
Katherine A. Drew                          Dallas, Texas 75207-4399
Chief, Appellate Division                  (214) 653-3550 *(phone)*
Dallas County Public Defender's Office     (214) 875-2363 *(fax)*
                                           Julie.Woods@dallascounty.org


## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing brief was served on the Dallas County Criminal District Attorney's Office (Appellate Division), 133 N. Riverfront Blvd., 10th Floor, Dallas, Texas 75207, by eServe on January 21, 2015.

                                           /s/ Julie Woods
                                           Julie Woods

## CERTIFICATE OF COMPLIANCE

I certify that the word count in this document, which was prepared in Microsoft Word 2010, is 9,906.

/s/ Julie Woods
Julie Woods